John A. PIERCE, Plaintiff,

v.

NEW PROCESS COMPANY, Defendant.

Civ. A. No. 83–223 ERIE.

United States District Court,
W.D. Pennsylvania.

March 6, 1984.

Roger H. Taft, J. Douglas Murphy, Mac-Donald, Illig, Jones & Britton, Erie, Pa., for plaintiff.

Donald Wright, Knox, Graham, McLaughlin, Gornall & Sennett, Erie, Pa., Michael R. Zeller, New York City, for defendant.

## OPINION

WEBER, District Judge.

Defendant has moved for summary judgment in this age discrimination case. The parties have submitted extensive evidentiary materials, including depositions and affidavits of parties and witnesses, which present all facts provable at trial. For the reasons stated below, we must grant summary judgment in favor of the defendant on all claims.

### I. FACTS

The undisputed facts of record may be summarized as follows:

Plaintiff was employed by the defendant New Process, a mail-order retail concern, since 1946. For the last 14 years of this association, plaintiff held the position of head of the List Department. Essentially plaintiff was responsible for the mailing lists employed by the company in its direct mail solicitation. Lists were typically purchased from list "brokers", with prices dependent in part on the anticipated rate of response.

Traditionally, New Process had employed relatively inexpensive lists in conducting its business. However, in early 1980 the rate of response from these lists had declined significantly. The company's officers began considering the purchase of more expensive lists, the increased price to be offset by anticipated higher customer response.

Over the next one and one-half years this alternative was the subject of repeated discussions involving the plaintiff and the company's officers. Plaintiff was repeatedly made aware of the desire of company officials for higher priced/higher return lists. On August 24, 1981, John J. Smith, Vice President of Planning, gave plaintiff a direct order to prepare letters within the week ordering such lists for testing.

Plaintiff failed to acquire lists of the type desired. On August 31, 1981, plaintiff was discharged. He was fifty-nine years and one month old.

### ANALYSIS

Plaintiff's principal cause of action is under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.

■ The order of proof in a suit under the ADEA echoes that of a Title VII action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Plaintiff must first make out a prima facie case of age discrimination. This is composed of four basic fact elements. 1) he is within the protected age group of 40–70; 2) he was the subject of an adverse employment action; 3) he was qualified for the position in question and 4) younger employees were treated more favorably. Proof of these basic facts raises an inference of discrimination which is given the force and effect of a rebuttable presumption. *Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

This accomplished, defendant must then articulate a legitimate, non-discriminatory reason for the employment action. Defendant's burden is light and the evidence need only raise a factual issue on the motivation for the employment action. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094.

The presumption thereby rebutted, plaintiff must then carry the burden of establishing discrimination by a preponderance of the evidence. Typically this is done by unmasking defendant's articulated reason as a mere pretext. It may also be accomplished by other evidence of discriminatory intent. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

■ Defendant seeks summary judgment on two separate theories which are grounded in the same essential facts. It is argued that plaintiff's failure to obtain the new mailing lists is conclusive evidence that plaintiff was not qualified for his position, and therefore plaintiff fails in his prima facie case. In the alternative, defendant contends that plaintiff's failure to obtain the lists was cause for discharge, a cause which plaintiff is unable to attack as pretext. Because we conclude that plaintiff is unable to present any evidence of pretext or discriminatory intent to counter defendant's articulation of a legitimate, non-discriminatory reason for the discharge, and because there is no disputed issue of material fact, summary judgment in favor of the defendant is appropriate. We therefore do not address the sufficiency of plaintiff's prima facie case.

As reason for the discharge, defendant's officers state that plaintiff failed to heed requests and a direct order to obtain new,

more expensive mailing lists for testing. By its evidence defendant has articulated a legitimate, non-discriminatory reason for the termination of the plaintiff. The burden is then on plaintiff to show by a preponderance of the evidence that this reason is mere pretext or that defendant acted with actual discriminatory intent. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

Plaintiff first argues that defendant's reason is pretextual because prior to the discharge no one in the company expressed dissatisfaction with plaintiff's job performance or complained about the failure to obtain the new lists. However, the company is under no obligation to warn plaintiff of complaints regarding his performance and, if anything, the effect of such evidence is equivocal, perhaps indicating that plaintiff was receiving the benefit of the doubt. Moreover, there is undisputed evidence that defendant's officers privately discussed plaintiff's failure to obtain the requested lists and also communicated to plaintiff their desire for these lists. In any event, it is undisputed that plaintiff's superior John Smith expressly told plaintiff that he was dissatisfied with the failure of the list department to produce or investigate new, more expensive lists, a full week prior to plaintiff's discharge.

Plaintiff also argues that he was never actually directed to procure the higher-priced lists, until the conversation with John Smith on August 24, 1981. Whether plaintiff had previously been ordered to obtain the new lists or not, he was admittedly aware that the company had been seriously considering such an option over a long period of time. Thus Smith's order of August 24, 1981 should have come as no surprise, but plaintiff was not prepared to act.

It is undisputed that on August 24 Smith directed plaintiff to prepare orders for new higher-priced lists for preliminary testing and have them on Smith's desk within the week. Plaintiff failed to carry out this direct order, despite his familiarity with such lists, and his receipt of a list of sug-gested sources prepared by his assistant soon after the August 24 meeting.

It is clear that plaintiff did not share the hopes of other company officials on the performance of the more expensive lists. Plaintiff consistently stated his belief that more expensive lists would not perform any better than the ones traditionally employed by the company. However, plaintiff's view of the potential effectiveness of the subject lists is irrelevant. It is undisputed that the other officers considered this a viable alternative, and plaintiff was under direct orders to procure such lists for testing.

Illustrative is the account by plaintiff's assistant, Ed Okruch, of a conversation between plaintiff and Okruch following plaintiff's meeting with Smith. Okruch's account is contained in his affidavit and is not countered by plaintiff in any material respect. Okruch proposed a number of lists which could be ordered for testing to satisfy Smith. Despite Smith's unequivocal instructions and the opinions of the other company officials distilled over eighteen months of discussion and declining response from the traditional lists, plaintiff rejected each source for a variety of reasons, refusing to even obtain them for testing.

Also pertinent is an exchange during the August 24 meeting between plaintiff and Smith. After again expressing his negative opinion on the lists which Smith wanted, plaintiff was warned that he would be replaced if he did not produce the orders for the lists within the week. Plaintiff told Smith that "if you feel that there is somebody else who knows more about names than I do", he should hire him. (Pierce, Depo., pp. 36–37). Again plaintiff undisputably placed his judgment above that of his superiors and co-workers, even in the face of a direct order.

Essentially then, the undisputed facts reveal: 1) plaintiff was given a direct order on August 24, 1981 to prepare letters ordering new lists for testing within one week; 2) plaintiff was familiar with such lists and was given others by his assistant; 3) plaintiff failed to prepare the letters

within the time allotted; 4) On August 31, 1981, plaintiff was discharged. Nowhere in this sequence is plaintiff able to present any facts to indicate pretext or discriminatory intent. He presents no evidence of disparate impact or company policy. The absence of complaints about performance, the absence of earlier commands, and plaintiff's own opinion on high-priced lists are all irrelevant in light of the direct order of August 24 which plaintiff undeniably failed to carry out.

Plaintiff relies on our recent decision in *Rubis v. McGraw-Edison Co.*, 570 F.Supp. 27 (W.D.Pa.1983), in which we denied defendant's motion for summary judgment. We recognized there the difficulties inherent in proving discriminatory intent and the need for reliance on circumstantial evidence. We do not depart from those views, but we conclude that the Rubis case is distinguishable on its facts, there being some evidence presented in response to defendant's motion for summary judgment in that case of a pattern and past policy of age discrimination. Those facts are not present here.

There is no material issue of fact which would preclude summary judgment. Plaintiff is unable to produce any evidence that he complied with Smith's order within the time allotted or that he was prevented from doing so. Although plaintiff asserts that he had made progress on the request, he had not made the deadline. Plaintiff is unable to produce any other evidence of pretext or discriminatory intent. Defendant will therefore be granted summary judgment on plaintiff's claim under the ADEA. For the same reasons summary judgment in favor of defendant is appropriate on plaintiff's claim under the Pennsylvania Human Relations Act, 43 Pa.Stat. Ann. § 951.

■ Plaintiff also seeks to maintain a common law claim for wrongful discharge in violation of public policy. Plaintiff identifies the root of such a claim in Art. I, Section I of the Pennsylvania Constitution. It is well decided however that the courts will not entertain a separate common law action for wrongful discharge where specific statutory remedies are available. *Bruffet v. Warner Communications, Inc.*, 692 F.2d 910, 920 (3d Cir.1982); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 195 (3d Cir.1978); *see also, Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221 at 224 (3d Cir. 1984). For this reason summary judgment will be granted in favor of the defendant on plaintiff's common law claim for wrongful discharge.

■ Plaintiff also states a common law claim for intentional infliction of emotional distress. While it appears that such a claim may be brought in conjunction with statutory actions for discrimination, *Shaffer v. National Can Corp.*, 565 F.Supp. 909 (E.D.Pa.1983), we conclude that plaintiff here is unable to produce evidence sufficient to withstand summary judgment on this claim. Our review of the evidentiary material submitted does not reveal any evidence of extreme and outrageous conduct which would support recovery under this claim. To the contrary, the undisputed facts reviewed above reveal a legitimate reason for the discharge, negating any allegation of extreme and outrageous conduct.

## CONCLUSION

For the reasons stated above, summary judgment will be granted in favor of the defendant on all claims. An appropriate order will issue.