619 A.2d 748

**Myles JACQUES, Jr., Appellant,**

v.

**AKZO INTERNATIONAL SALT, INC.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1992.

Filed Jan. 15, 1993.

420

Peter G. Loftus, Scranton, for appellant.

Francis J. Connell, III, Philadelphia, for appellee.

CIRILLO, Judge:

Myles F. Jacques appeals from an order of the Court of Common Pleas of Lackawanna County granting summary judgment to Akzo International Salt, Inc. on all four counts of Jacques's complaint, related to his dismissal by the company. We affirm.

Jacques was hired in June, 1982 by International Salt Company, predecessor corporation to Akzo International (Akzo) as a credit administrator. Jacques was hired by telephone and, according to his deposition, no representations were made to him about the length of his employment, its terms, or the conditions under which he could be terminated. He has no written employment contract.

The next year Jacques was promoted to credit manager. Jacques's evaluations were favorable but his supervisor suggested that he should be less hard-nosed, less abrasive and that he should use "more honey and less vinegar" when dealing with other employees. In 1988 International Salt purchased a salt division of Diamond Crystal Salt Company and Jacques became the manager of the combined credit and collection departments of the merged companies. Jacques testified he was told his supervisor "wanted no confrontations with Diamond Crystal people."

By all accounts, Jacques's tenure as manager of the combined departments was troubled. An affidavit by Jacques's supervisor testified to unapplied cash which accumulated at "an alarming rate," the write-off of more than one million dollars worth of billing discrepancies, and Jacques's deteriorating relationship with sales personnel, particularly Diamond Crystal's staff.

Jacques testified to accounting discrepancies, to decisions which were made about his department without his input, and

about deteriorating interpersonal relationships with superiors, those he supervised, and colleagues, although he ascribed the problems to causes which differed from that identified by his supervisor.

On June 12, 1989 Jacques was fired. Jacques was 50 years old and was replaced by a man of 46.

Jacques's complaint enumerated four counts: that his termination was a violation of the Pennsylvania Human Relations Act's prohibition on age discrimination; that his was a wrongful discharge; that his discharge breached an employment contract; and that his discharge was an intentional infliction of emotional distress.

Akzo answered the complaint, written discovery was conducted, and Jacques was deposed. After the submission of affidavits and oral argument, the trial court granted Akzo's motion for summary judgment on all four counts of Jacques's complaint. This timely appeal followed.

Jacques raises four questions for our consideration:

1) Was summary judgment appropriate before the pleadings were closed;

2) Was the evidence sufficient to support a claim for age discrimination under the Pennsylvania Human Relations Act;

3) Was the evidence sufficient to support a claim for wrongful discharge; [1]

4) Was the evidence sufficient to support a claim for intentional infliction of emotional distress.

■ When we review the grant of a motion for summary judgment made under Pa.R.C.P. 1035,[2] our scope of review is

1. Jacques apparently is lumping together under the rubric of "wrongful discharge" his claim that his dismissal was wrongful as a violation of public policy and his claim that his dismissal was in violation of an employment contract.

2. Rule 1035(a) provides:
 After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and any depositions, answers to interrogatories, admissions on file and supporting affidavits.
 Pa.R.C.P. 1035(a), 42 Pa.C.S.A.

well-settled: summary judgment is properly granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b), 42 Pa.C.S. Summary judgment may be granted only where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989). The moving party has the burden of proving that there is no genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). The record and any inferences therefrom must be viewed in the light most favorable to the nonmoving party, and any doubt must be resolved against the moving party. *Davis v. Pennzoil*, 438 Pa. 194, 264 A.2d 597 (1970). The trial court will be overturned on the entry of summary judgment only if there has been an error of law or a clear abuse of discretion. *Hetrick v. Apollo Gas Co.*, 415 Pa.Super. 189, 608 A.2d 1074 (1992).

Even though Jacques's questions are inartfully presented, our standard of review dictates that we examine each of the counts in his original complaint to determine whether there is a genuine issue of material fact or whether Akzo is entitled to a judgment as a matter of law. *Davis, supra;* Pa.R.C.P. 1035(b).

## SUMMARY JUDGMENT

 Jacques's first issue is whether summary judgment was entered prematurely. Because the issue was not raised in the trial court, it is not preserved for review here. Pa.R.A.P. 302(a). Had the issue been properly preserved, it is without merit because the *pleadings,* as required by Rule 1035(a), were closed when Jacques failed to respond to Akzo's Answer and New Matter, filed on July 9, 1991. *See* Pa.R.C.P. 1017.[3] Under Pa.R.C.P. 1029 the averments of Akzo's New Matter

---

**3.** Rule 1017(a) states:

Except as provided by Rule 1041.1, the pleadings in an action are limited to a complaint, an answer thereto, a reply if the answer contains new matter or a counterclaim, a counter-reply if the reply to a counterclaim contains new matter, a preliminary objection and an answer thereto.

Pa.R.C.P. 1017(a), 42 Pa.C.S.A.

are deemed admitted for failure to deny. If we read the question as claiming that the trial court allowed Jacques insufficient time for discovery, we review the trial court's decision under the standard of abuse of discretion or error of law. *Kerns v. Methodist Hospital,* 393 Pa.Super. 533, 543, 574 A.2d 1068, 1075 (1990). We are satisfied that each of Jacques's discovery requests was answered before the entry of summary judgment, including the one served two days before oral argument. Six months passed between Jacques's complaint and the filing of the motion for summary judgment, during which time Jacques apparently made no requests for depositions nor made any attempt to schedule viewing of documents. Therefore, the trial court's decision to enter summary judgment was not an abuse of discretion. *Kerns, supra.*

## EMPLOYMENT AT–WILL

■ Pennsylvania is an at-will employment state. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). This means that any employer may at any time for any reason dismiss an employee. *Hershberger v. Jersey Shore Steel Co.,* 394 Pa.Super. 363, 575 A.2d 944 (1990). There are, however, a limited number of statutory and common law exceptions to employment at will. *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990); *Geary, supra.* Jacques's complaint alleges that his dismissal invokes each of Pennsylvania's three exceptions to employment at-will: wrongful discharge based on discrimination, 43 Pa.S. § 951 *et seq.;* wrongful discharge based on a public policy tort, *Turner v. Letterkenny Federal Credit Union,* 351 Pa.Super. 51, 55, 505 A.2d 259, 261 (1985); and wrongful discharge based on an actual or implied contract. *Banas v. Matthews International Corp.,* 348 Pa.Super. 464, 502 A.2d 637 (1985). None of Jacques's allegations is sufficient to overcome the strong public policy in favor of employment at-will, but we will consider each separately.

## AGE DISCRIMINATION

A cause of action based on age discrimination in Pennsylvania is found in 43 Pa.S. § 955 *et seq.*[4] which forbids discrimination in employment based on age.[5] Pennsylvania courts use federal interpretations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to inform our interpretations of the Pennsylvania Human Relations Act, 43 Pa.S. § 951 *et seq. See Fairfield Twp. Volunteer Fire Co. No. 1 v. Pennsylvania Human Relations Commission*, 530 Pa. 441, 609 A.2d 804 (1992).

The jurisprudence of discrimination has established a three-step process for proving discrimination. First, the employee must make out a *prima facie* case of discrimination. *See Civil Service Commission of the City of Pittsburgh v. Commonwealth, Pennsylvania Human Relations Commission*, 527 Pa. 315, 591 A.2d 281 (1991) (an obese city worker failed to prove that he was a member of the protected class of handicapped persons.) An employee establishes a *prima facie* case by showing that 1) he or she belongs to a protected class; 2) that he or she was qualified for the position; 3) that he or she was dismissed despite being qualified; and 4) that the company sought a person outside the protected class for the position. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976).

Once the employee has established a *prima facie* case of discrimination, the burden of proof shifts to allow the employer an opportunity to rebut the inference of the *prima facie* case. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The

4. In relevant part, 43 Pa.S. § 955 provides:
 It shall be an unlawful discriminatory practice ... (a) For any employer because of the ... age ... of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual.
 43 Pa.S. § 955.

5. Jacques complied with the procedural requirements of the Human Relations Act, 43 Pa.S. § 951 *et seq.*, and elected to file a complaint pursuant to 43 Pa.S. § 962(c) after the Pennsylvania Human Relations Commission dismissed his complaint on grounds the facts did not establish probable cause that unlawful discrimination had occurred.

employer has the opportunity to articulate some nondiscriminatory, permissible reason for firing the employee. *McDonnell Douglas, supra; General Electric, supra.* If the employer articulates a nondiscriminatory reason for his or her employment decision, then the burden of proof shifts back to the employee, who is given an opportunity to prove that the articulated, nondiscriminatory reason is pretextual. *McDonnell Douglas, supra; General Electric, supra.* In *General Electric,* female employees were laid off rather than reassigned as male employees had been when a division closed. The female employees proved that they were members of a protected class and that the company's articulated reason for reassigning only men was a pretext.

■ Jacques's first burden is to show a *prima facie* case of discrimination. Pennsylvania law provides no guidance on what quantum of difference in age would satisfy the fourth requirement of a *prima facie* case, that the replacement be significantly younger than the plaintiff. Federal courts have held that an inference of age discrimination arises when the difference in ages between plaintiff and his replacement is 20 years. *Maxfield v. Sinclair International,* 766 F.2d 788 (3d Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Pierce v. New Process Co.,* 580 F.Supp. 1543 (1984). But, no inference of age discrimination will arise when the difference in ages between a dismissed employee and his replacement is only one year. *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1088 (3d Cir.1992). When Jacques was fired he was 50 years old;[6] his replacement was four years younger. The difference in ages is too slight to raise an inference of age discrimination.

■■ The plaintiff's burden is, however, slight in establishing a *prima facie* case. *Burdine, supra.* If we were to find that Jacques had established a presumption of age discrimina-

6. We are puzzled by Jacques's insistence that he was almost 52 when he was fired. Jacques was born July 31, 1938; he was fired June 16, 1989. He was, therefore, more than a month short of 51, not 52. His replacement, James Silvernail, was 46 when he was appointed, a month short of 47.

tion, the record amply supports Akzo's nondiscriminatory reasons for terminating Jacques. It is clear Jacques's tenure as manager of the combined departments was punctuated by controversy. Jacques argues he was not responsible for the strife; the company says he was. Who is right matters not. The record demonstrates the claims of contention were not pretextual. Akzo may fire Jacques for any reason or no reason, *Hershberger, supra,* so long as that reason is not discriminatory. Even taking as true all factual assertions made by Jacques, and all reasonable inferences therefrom, as we must under *Davis, supra,* we find no facts from which we could conclude there was a genuine issue of material fact as to whether Jacques was fired for a discriminatory reason. Jacques admitted problems with accumulating unapplied cash, problems with discrepancies which led to more than one million dollars in write-offs, and difficulties dealing with other employees. He offered no evidence that age was a factor in his firing except that his replacement was four years younger. Jacques has failed to demonstrate that the reasons for his dismissal were pretextual and, therefore, has failed to meet his burden in the third prong of *McDonnell Douglas* and *General Electric.*

Since Jacques has failed to offer any evidence which would support an age discrimination claim, we find that summary judgment was appropriate. *Davis, supra; McDonnell Douglas, supra.*

WRONGFUL DISCHARGE

Jacques's complaint and his appeal allege wrongful discharge on two distinct theories: the first as a violation of the public policy tort and the second as a violation of an implied contract.

■ Jacques claims that his dismissal violated public policy in that it was an act of age discrimination and was effected to deprive him of his pension rights. It is well-settled that the courts will not entertain a separate common law action for wrongful discharge where specific statutory remedies are available. *Clay v. Advanced Computer Applications,* 522 Pa.

86, 89, 559 A.2d 917, 918 (1989) (citing with approval *Householder v. Kensington Manufacturing Co.*, 360 Pa.Super. 290, 520 A.2d 461, *appeal denied*, 516 Pa. 629, 532 A.2d 1137 (1987)). Our supreme court held that the Pennsylvania Human Relations Act, 43 Pa.S. § 951 *et seq.*, preempts claims of wrongful discharge based on a violation of the public policy against discrimination. *Clay, supra.* The federal courts, applying Pennsylvania law, have also found preemption of the common law claim by statute. *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910 (3d Cir.1982); *Pierce v. New Process Company*, 580 F.Supp. 1543 (W.D.Pa.1984). It is the existence of the remedy, not the success of the statutory claim, which determines preemption. *Keck v. Commercial Credit Union Ins. Co.*, 758 F.Supp. 1034 (M.D.Pa.1991).

We need spend no time on Jacques's claim that his dismissal violated the public policy tort because it deprived him of his pension benefits. Jacques offered no fact which would tend to show that he was deprived of any pension benefit which he had earned prior to the date of dismissal. His argument that he was deprived of an opportunity to earn *more* pension benefits fails in the face of logic. And, most tellingly, federal law preempts any tort claim which Jacques might bring. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.*, preempts wrongful discharge claims based on wrongful interference with benefit rights.)

Jacques's contention that a discharge may be wrongful if it evidences a specific intent to harm is discredited in Pennsylvania law. *Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022 (1991), *allocatur denied*, 529 Pa. 623, 600 A.2d 539 (1991). *Yetter* held that public policy is found only in clear legislative mandate "at the heart of a citizen's social right, duties and responsibilities." *Id.* at 474, 585 A.2d at 1026 (citations omitted). Jacques's reliance on *Booth v. McDonnell Douglas Truck Service*, 401 Pa.Super. 234, 585 A.2d 24, *allocatur denied*, 528 Pa. 620, 597 A.2d 1150 (1991), is misplaced. While *Booth* suggested in *dicta* and without au-

thority that a specific intent to harm might make out a violation of the public policy tort, the court there found no such cause of action. In fact, the *Booth* court held that withholding commissions owed and breaking a one-year contract did not rise to the level of specific intent to harm. The *Booth* case is more generally read as a further limitation on the public policy tort. *See Borse v. Piece Goods Shops, Inc.,* 963 F.2d 611 (3d Cir.1992). *Yetter* subsumes the specific intent to harm into the public policy tort and demands that the public policy be articulated in legislation, administrative regulation, or judicial decision. 401 Pa.Super. at 474, 585 A.2d at 1026.

Jacques also alleges that his discharge was wrongful because it violated an implied employment contract based on an employee handbook. An employee handbook only forms the basis of an implied contract if the employee shows that the employer affirmatively intended that it do so. *Morosetti v. Louisiana Land and Exploration Co.,* 522 Pa. 492, 564 A.2d 151 (1989); *see also Greene v. Oliver Realty Inc.,* 363 Pa.Super. 534, 526 A.2d 1192 (Cirillo, J.), *appeal denied* 517 Pa. 607, 536 A.2d 1331 (1987) (an employment contract is not formed without specific intent and consideration). There is nothing in the employee handbook, "Your Company, Your Job, Your Benefits—A Guide for Salaried Employees," which would indicate an intent to form a contract. The handbook does not purport to change the at-will employment relationship.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Jacques's final argument is that summary judgment is inappropriate on his claim for intentional infliction of emotional distress because there is evidence in his deposition from which a suicide attempt could be inferred. He testified that his companion called the police when he, Jacques, was cleaning a hunting rifle. The companion, Jacques said, misinterpreted the handling of the rifle as a suicide threat.

To make out a claim of intentional infliction of emotional distress, the plaintiff must show conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be intolerable in a civilized community." *Clay v. Advanced Computer Systems, Inc.*, 370 Pa.Super. 497, 514, 536 A.2d 1375, 1384 (1988) (citations omitted), *reversed in part on other grounds, Clay v. Advanced Computer Systems Inc.*, 522 Pa. 86, 559 A.2d 917 (1989). Termination is not such conduct. *Rinehimer v. Luzerne County Community College*, 372 Pa.Super. 480, 539 A.2d 1298 (Cirillo, J.), *appeal denied* 521 Pa. 606, 555 A.2d 116 (1988). The record fails to support Jacques's contention on appeal that his termination generated a suicide attempt. In any event, it is the conduct which must be outrageous, not the reaction to that conduct, to create a cause of action for intentional infliction of emotional distress. *Clay, supra; Rinehimer, supra.*

## CONCLUSION

When we consider all of Jacques's claims and take as true all of his reasonable factual assertions, we find that there is no genuine issue of material fact and that Akzo is entitled to summary judgment as a matter of law on each of Jacques's four counts.

Order affirmed.

McEWEN, J., files a concurring statement.

McEWEN, Judge, concurring:

The disposition by this Court of this case is controlled by certain threshold factors: the quite pronounced posture of Pennsylvania as an at-will employment state, as well as the rather limited statutory common law exceptions to that position. Moreover, however real the dispute as to whether social enlightenment demands that Pennsylvania assume a less rigid posture, no one will dispute that such a decision is solely the prerogative of the Legislature. Thus it is that I agree that the distinguished President Judge James J. Walsh correctly proceeded to grant summary judgment in favor of appellee.