**Learn v. Hibbard**

*Andrew J. Conner,* for plaintiff.
*Thomas M. Lent,* for defendant.

VARDARO, *J.,* May 18, 1993—

## FACTS

This case arises out of a failed attempt by plaintiff's decedent, David B. Learn, to obtain life insurance. The plaintiff is the widow of David B. Learn and the defendant, now deceased, was Mr. Learn's physician at all times relevant to this matter.

In August 1985, Mr. Learn applied for a life insurance policy with the American Guardian Life Insurance Co. The application listed the defendant as Mr. Learn's personal physician. In conjunction with that application, American Guardian sent an attending physician's statement (APS) to the defendant. Despite reminders from American Guardian, everyone agrees that statement was never completed or returned to them.

Subsequent to the filing of the application for insurance, Mr. Learn was hospitalized once in mid-October with heart problems and on November 1, 1985 he suffered a heart attack and died.

Based upon his application to American Guardian, Mr. Learn had been required to undergo an EKG. The results of that EKG were initially reviewed for American Guardian by Dr. Norman Knee on August 26, 1985 and the results were categorized by Dr. Knee as abnormal. Upon reviewing three other EKG's which had been performed on Mr. Learn in June 1983, Dr. Knee was apparently of the opinion that Mr. Learn possibly had suffered a heart attack.

Despite this interpretation of the EKG's by Dr. Knee, American Guardian decided to postpone its decision on whether to provide insurance to Mr. Learn until after the APS had been received from Dr. Hibbard. Since American Guardian had not received the APS, they issued a declination on October 30, 1985 giving the reason as "postponed due to our medical findings." Mr. Learn's insurance agent was notified of this by a letter dated October 31, 1985.

Mr. Learn was also notified by a letter dated October 31, 1985 that "information received prevents our issuing a contract of insurance at this time." Additionally, the notice indicated that the company would reconsider another application if a current health form was submitted by Mr. Learn's "personal physician."

At his deposition, George Touros, head of underwriting at American Guardian, indicated that the sole basis for not issuing the requested policy to Mr. Learn was the fact that the APS had never been received. However, Mr. Touros could not state with any certainty that a policy would have been offered if the APS had been completed and sent.

## DISCUSSION

The standards for analyzing a motion for summary judgment were recently reviewed by *Jacques v. Akzo International Salt Inc.*, 422 Pa. Super. 419, 619 A.2d 748 (1993).

"[S]ummary judgment is properly granted where 'there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law.' Pa.R.C.P. 1035(b), 42 Pa.C.S. Summary judgment may be granted only where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 522 Pa. 367, 369, 562

A.2d 279, 280 (1989). The moving party has the burden of proving that there is no genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979). The record and any inferences therefrom must be viewed in the light most favorable to the non-moving party, and any doubt must be resolved against the moving party. *Davis v. Pennzoil,* 438 Pa. 194, 264 A.2d 597 (1970)." *Jacques, supra.* See also, *Aqua-Life Inc. v. Pa. State Game Commission,* 153 Pa. Commw. 145, 620 A.2d 654 (1993); *Hayward v. Medical Center,* 530 Pa. 320, 608 A.2d 1040 (1992).

The plaintiff's complaint alleges one theory, negligence on the part of the defendant in failing to complete and return the APS.

There are four elements to a successful negligence claim. The plaintiff must allege and prove:

"(1) That she was owed a duty of care;

"(2) That the duty was breached;

"(3) That she was injured; and

"(4) That the injuries were proximately caused by the breach of duty." *Waddell v. Bowers,* 415 Pa. Super. 469, 609 A.2d 847 (1992), citing *Ellis v. Sherman,* 512 Pa. 14, 18, 515 A.2d 1327, 1328 (1986); *Mascina v. McAdams,* 280 Pa. Super. 115, 120, 421 A.2d 432, 434 (1980).

The first question therefore becomes whether or not Dr. Hibbard owed a duty to the plaintiff as the intended beneficiary of any anticipated insurance policy.

It appears to be clear that a physician does owe his patient a duty to complete and send an APS. *Alexander v. Knight,* 197 Pa. Super. 79, 177 A.2d 142 (1962); *Murphy v. Godwin,* 303 A.2d 668, 674 (Del. 1973); and *Hammonds v. Aetna Casualty and Surety Co.,* 243 F. Supp.

793, 799 (N.D. Ohio E.D. 1965) as well as *Klein v. Morgen,* 760 F. Supp. 1403 (D. Colo. 1991).

While Pennsylvania courts have extended the duty of a physician to third parties who are foreseeably at risk of personal injury due to the medical condition of the physician's patient, no court in this Commonwealth to our knowledge has determined whether this duty extends to individuals who are the intended beneficiaries of any anticipated insurance policy.

The only case that we are aware of which is factually substantially similar to the case before us is *Klein v. Morgen,* 760 F. Supp. 1403 (D. Colo. 1991), a Colorado federal court case.

In *Klein,* the plaintiffs, Herbert, Marsha and Evan Klein, filed a negligence action against Robert Morgen, M.D., for failure to timely complete and deliver several attending physician's statements that were required in order for Herbert Klein to obtain disability and life insurance coverage.

In deciding whether a duty was owed to the potential beneficiaries of the policies, the court in *Klein* used the following general rule:

"Courts decide the legal issue whether a duty is owed based on, inter alia, the following factors: '[T]he risk involved, foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury or harm and the consequences of placing the burden upon the actor.' *Id.* at 57.

"The above non-exhaustive list does not preclude considering other factors implicated by individual public and social interests peculiar to a particular case. *Id.* Indeed no one factor is controlling and the question of whether a duty should be imposed is essentially one of fairness under contemporary standards — whether reasonable per-

sons would recognize a duty and agree that it exists. *Taco Bell Inc. v. Lannon*, 744 P.2d 43, 46 (Colo. 1987)." *Klein* at 1408.

Pursuant to those identified factors and relying heavily on the forseeability element, the court in *Klein* held that not all persons who may be harmed are owed a duty by a physician who is asked to complete an APS. The court stated "[t]hat proposal simply casts the net of liability too broadly." *Id.* at 1408. The court noted that there was no evidence that Morgen was aware that Marsha and Evan Klein would be named as beneficiaries of Klein's anticipated insurance contracts and he did not owe a duty to the plaintiffs, Marsha and Evan Klein.

The court concluded to hold otherwise would be to justify suit in similar circumstances by any party that a person seeking insurance coverage may allege would have been named as the insurance contract's beneficiary regardless of whether the risk of injury to the alleged beneficiary was foreseeable to the physician.

The only Pennsylvania case that we can find involving similar circumstances was a legal malpractice suit brought by legatees of a will which was defectively executed. *Guy v. Liederbach*, 501 Pa. 7, 459 A.2d 744 (1983). The Supreme Court in that case allowed the plaintiffs to continue their claim under a theory of intentional third-party beneficiaries in an assumpsit action; however, the demurrer by the defendant to the negligence action was sustained with the court indicating that the privity requirement in malpractice actions based on negligence would not be eliminated.

"[W]hile important policies require privity (an attorney-client or analogous professional relationship or a specific undertaking) to maintain an action in negligence for professional malpractice, a named legatee of a will may bring suit as an intended third-party beneficiary of

the contract between the attorney and the testator for the drafting of a will which specifically names the legatee as recipient of all or part of the estate." *Guy, supra.*

We not only find the *Guy* court rational persuasive, we also believe that it controls the determination in this case. The *Guy* court addressed not just attorney negligence but "professional malpractice" generally.

Such a conclusion is not contrary to the Pennsylvania Supreme Court's recent holding in *DiMarco v. Lynch Homes-Chester County Inc.,* 525 Pa. 558, 583 A.2d 422 (1990). In that case, the court determined that a physician owes a duty of care to a third party where the physician fails to properly advise a patient who has been exposed to a communicable disease and the patient, relying upon the advice, spreads the disease to a third party.

In reaching that conclusion, the court relied on the Restatement (Second) of Torts §324A, which states:

"§324A. *Liability to Third Person for Negligent Performance of Undertaking*

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if (a) his failure to exercise reasonable care increased the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or third person upon the undertaking."[1]

---

1. Section 324A was adopted by the Pennsylvania Supreme Court in *Cantwell v. Allegheny County,* 506 Pa. 35, 483 A.2d 1350 (1984).

However, in *Lower Lake Dock v. Messinger Bearing,* 395 Pa. Super. 456, 577 A.2d 631 (1990), the Pennsylvania Superior Court indicated that the Restatement (Second) of Torts §324A has never applied to purely economic losses and they refused to do so at that time. The court indicated that section 324A had only been applied when there were personal injuries or damage to other property of the plaintiff. See also, *Spivack v. Berks Ridge Corp.,* 402 Pa. Super. 73, 586 A.2d 402 (1990) (economic losses may not be recovered in negligence action absent physical injury or property damage) and *Margolis v. Jackson,* 375 Pa. Super. 182, 543 A.2d 1238 (1989) (purely economic loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery for which negligent tort-feasor is legally liable, even if economical loss is direct result of the negligent act).

We conclude that the defendant did not owe a duty to the plaintiff to complete and send an APS to American Guardian.

This does not bar a potential life insurance beneficiary from recovery in a similar situation. A successful action will be recognized in the appropriate circumstances under an assumpsit theory alleging intended third-party beneficiary status.

The plaintiff has alternatively requested to amend her complaint to allege an assumpsit theory of recovery based on her status as an intended third-party beneficiary of the implied contract between the defendant and Mr. Learn wherein the defendant would complete and send an APS to American Guardian.

Leave to amend a complaint is within the sound discretion of the trial court. *Simmons v. Township of Moon,* 144 Pa. Commw. 198, 601 A.2d 425 (1991). However, a request to amend pleadings should be liberally evaluated in an effort to secure determination of cases upon their

merits rather than upon mere technicality. *Horowitz v. Universal Underwriters Insurance,* 397 Pa. Super. 473, 580 A.2d 395, *appeal denied* 527 Pa. 610, 611, 590 A.2d 297, 298 (1991).

An amendment which introduces a new cause of action that is barred by the statute of limitations is prohibited. *Bata v. Central-Penn National Bank,* 448 Pa. 355, 293 A.2d 343 (1972), *cert. denied* 409 U.S. 1108, 93 S.Ct. 910, 34 L.Ed.2d 689, *reh'g denied* 410 U.S. 960, 93 S.Ct. 1417, 35 L.Ed.2d 695; *New York State Electric and Gas Corp. v. Westinghouse Electric Corp.,* 387 Pa. Super. 537, 564 A.2d 919 (1989).

In this case, the plaintiff has alleged a cause of action based on a tort theory and now proposes to amend her complaint to allege a contract theory of recovery. In order to recover under a theory of third-party beneficiary status, the plaintiff, in addition to alleging the existence of a contract, must allege and prove that "both parties to the contract had an intent to benefit the third party through the contract and did, in fact, explicitly indicate this intent in the contract." *Struxt v. State Farm Mutual Insurance Co.,* 415 Pa. Super. 371, 609 A.2d 569 (1992), *alloc. denied* 615 A.2d 1313. Plaintiff has not alleged the existence of a contract or other requisite elements of a cause of action under a theory of third-party beneficiaries.

The statute of limitations for a contract action is four years. 42 Pa.C.S. §5525. Under this section, in an action for breach of contract the statute of limitations begins to run from the time of the breach. *Baud v. Marley Co.,* 537 F. Supp. 156 (D.C. 1982).

However, the statute of limitations for a negligence action (tort claim) is two years. 42 Pa.C.S. §5524(7). The statute of limitations for negligence actions is triggered

upon occurrence of an alleged breach of duty. *School District of Borough Aliquippa v. Maryland Casualty,* 402 Pa. Super. 569, 587 A.2d 765 (1991); *Moore v. McComsey,* 313 Pa. Super. 264, 459 A.2d 841 (1983). It is possible that the discovery rule applicable in malpractice cases may push the running of the statute of limitations to the time of discovery or a time when plaintiff reasonably should have discovered the injury. *Dudley v. WCAB (Marple Township),* 80 Pa. Commw. 233, 471 A.2d 169, *aff'd* 510 Pa. 283, 507 A.2d 388 (1984). However, this is not your typical medical malpractice case.

In this case, the plaintiff's decedent was notified by the insurance company on October 31, 1985 that the policy would not be accepted and that an APS had not been filed. The plaintiff would have had to know of the failure to file an APS at least sometime shortly after Mr. Learn's death on November 1, 1985 and, in any event, the plaintiff must be chargeable with knowledge of the breach by September 1987 when the complaint in this action was filed.

Taking the latter date as the time for the commencement of the running of the statute of limitations, the limitations period would have run with respect to the tort action in September 1989 and with respect to the contract action in September 1991.

"This court has held ... the right to amend should be liberally granted at any state of the proceedings unless there is an error of law or resulting prejudice to an adverse party.... An amendment introducing a new cause of action will not be permitted after the statute of limitations has run in favor of the defendant.... This would constitute 'resulting' prejudice to the adverse party." *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600 (1983). (citations omitted)

In a recent case, the Pennsylvania Superior Court stated the proper analysis when faced with a request for leave to amend a complaint:

"An amendment introducing a new cause of action will not be permitted after the statute of limitations has run in favor of a defendant. However, if the proposed amendment does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even though the statute of limitations has already run.... In determining whether a wholly different cause of action is introduced by the amendment, technical considerations or ancient formulae are not controlling; nothing more is meant than the defendant shall not be required to answer a wholly different legal liability or obligation from that originally stated.... [T]he test is whether an attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant. *Hodgen v. Summers,* 382 Pa. Super. 348, 350-51, 555 A.2d 214, 215 (1989)." *Frey v. Pennsylvania Electric Co.,* 414 Pa. Super. 535, 607 A.2d 769 (1992), *alloc. denied* 614 A.2d 1142. (citations omitted)

*Frey* involved a request to amend the complaint alleging a wrongful death action to include a count alleging a survival action. Appellant/plaintiff's argument was that the essence of the survival claim had already been pled. The court denied the request by affirming the lower court's order. In doing so, the court pointed to the difference on the two types of actions including their purpose and availability.

In addition, the court engaged in an analysis pursuant to an established test as to whether or not an amendment constitutes a new cause of action.

"We have held that tests for determining when an amended complaint presents a different cause of action,

which is therefore barred, are: whether a judgment would foreclose an action on either; whether the same measure of damages supports both; whether the same defenses are available in each; and whether the same measure of proof is required. *Hodgen,* 382 Pa. Super. at 350, 555 A.2d at 215." *Frey, supra.*

Clearly, a negligence action and a contract action are separate and distinct causes of action. Judgment on one cannot in and of itself foreclose the other; the measure of damages is different; the defenses are different; and the elements of proof are different. In addition, each is governed by a different limitations period.

Accordingly we hereby deny plaintiff's request to amend.[2]

2. Based on the above determinations, we do not reach the causation issue.