## Willever v. Sovereign Bank

C.P. of Northampton County, no. 1996-C-3173.

*Craig J. Smith,* for plaintiff.
*C. Thompson Bell III* for defendant.

PANELLA, *J.,* December 23, 1998—The matter before the court is a non-jury trial held on November 9 and 10, 1998. At issue is the plaintiff's alleged improper termination from her employment with the defendant, Sovereign Bank. At the close of trial, the parties agreed to a briefing schedule and the matter was again brought to the court by way of the November 23, 1998 argument list. This decision is entered in accordance with Pennsylvania Rule of Civil Procedure 1038.

## STATEMENT AND FINDINGS OF FACTS

(1) The testimony of Fred Klabunde was credible.

(2) The testimony of Diana Gerbino was credible.

(3) The testimony of Amy Sunnergren was credible.

(4) The testimony of John Cahill was credible.

(5) The testimony of Carolyn Fry-Albert was credible.

(6) The testimony of John Willever was credible.

(7) The testimony of Patricia Willever was credible.

(8) The testimony of Andrew C. Verzilli was credible.

(9) The testimony of Louella Gray was not credible. Her testimony was inconsistent, in significant and material ways, with other credible witnesses.

(10) The testimony of Deborah Stillions was unreliable. Her testimony contained numerous inconsistencies with other credible witnesses and inconsistencies within her own testimony; Ms. Stillions did not remember facts pertinent to the issues involved in this case which the court finds that she should have recalled under the circumstances.

(11) The testimony of Scott Abercrombie was not credible. Based upon Mr. Abercrombie's demeanor on the witness stand, as well as his lack of memory and recollection of pertinent, material facts, his testimony was mostly not credible.

(12) The plaintiff, Patricia A. Willever, was an employee within the meaning of Pennsylvania Human Relations Act, 43 Pa.C.S. §951 et seq.

(13) Defendant, Sovereign Bank F.S.B., is an employer within the meaning of the PHRA.

(14) Plaintiff was employed with Valley Federal Savings and Loan Association from May 5, 1975 until November 5, 1993, when the defendant purchased Valley Federal.

(15) While working for Valley Federal, through time, the plaintiff held the positions of secretary, delinquent loan counselor, supervisor/manager of delinquency control, and administrative assistant to Mr. Klabunde.

(16) Throughout her employment with Valley Federal, plaintiff received excellent job performance evaluations and was promoted a number of times.

(17) On or about November 5, 1993, Sovereign purchased Valley Federal and became its successor.

(18) At the time of the merger, plaintiff informed Sovereign that she wished to remain employed with them,

and inquired regarding job openings at their various locations.

(19) John Cahill, who had been Valley Federal's manager in the lending division, and who was placed in the mortgage department of Sovereign, requested that the plaintiff be placed in his department after the merger.

(20) After the merger, the plaintiff was assigned to Sovereign's Easton loan office.

(21) At Sovereign, the plaintiff's job duties included loan processing, mortgage modification, preparation of releases and receptionist duties.

(22) Plaintiff's title with Sovereign, "loan processor representative I," and her job duties were set forth on a document which was admitted into evidence as plaintiff's exhibit 6.

(23) Plaintiff was qualified for the position she held at Sovereign and no Sovereign employee ever expressed any dissatisfaction with plaintiff's job performance.

(24) Defendant terminated plaintiff on April 29, 1994 and informed her that her position as loan processor/receptionist had been eliminated.

(25) Scott Abercrombie, the Sovereign employee who made the decision to terminate the plaintiff, had access to the plaintiff's personnel file, which included her age.

(26) At the time of her termination, plaintiff was 59 years old and the oldest employee in Sovereign's Easton office.

(27) On April 29, 1994, there were two people in Sovereign's Easton office doing loan processing. They were the plaintiff and Annette Sabella.

(28) The plaintiff was told that the reason for her termination was a reduction in force.

(29) On the same day plaintiff was told of her termination, Louella Gray, Sovereign's director of outside sales, informed Amy Sunnergren that her job in the con-

struction lending office was being eliminated and that she was being moved into the Easton loan processing office to assume the plaintiff's responsibilities.

(30) Sunnergren was age 35 at the time of plaintiff's termination.

(31) On April 30, 1994, there were two Sovereign employees doing loan processing in the Sovereign Easton office. They were Amy Sunnergren and Annette Sabella.

(32) Plaintiff's job was not eliminated on April 29, 1994, and therefore, the reason given for her termination was pretextual.

(33) Plaintiff was more qualified than Amy Sunnergren for the loan processing/receptionist job in Sovereign's Easton loan processing office.

(34) On April 29, 1994, at the time of her termination, plaintiff inquired if Sovereign had any other jobs available in any of its offices. Although Sovereign had positions for which plaintiff was qualified, she was informed that no positions were available.

(35) Plaintiff suffered emotional distress, humiliation and embarrassment due to her termination, and as a result, developed physical symptoms of her emotional distress.

(36) At the time of her termination, plaintiff earned an annual salary of $30,139.99.

(37) Plaintiff is entitled to $2,500 to compensate her for her emotional distress and embarrassment.

(38) Plaintiff is entitled to $117,248 to compensate her for her lost front and back pay.[1]

---

1. The court arrives at this number by taking the $134,000 that the plaintiff's expert testified was plaintiff's lost wages, and subtracting $16,752, which we find to be the amount included in the $134,000 which was compensation for pay increases which the plaintiff might have received from Sovereign. We find that there was not sufficient

## STANDARD OF LAW

It is axiomatic that questions of fact and credibility decisions must be resolved by the fact-finder. *Ludmer v. Nernberg,* 433 Pa. Super. 316, 640 A.2d 939 (1994).

"[T]he findings of a trial judge in a non-jury case must be accorded the same weight and effect on appeal as the verdict of a jury, and will not be reversed in the absence of an abuse of discretion or a finding of a lack of evidentiary support. *Firestone v. Luther Ford Sales Inc.,* 271 Pa. Super. 480, 414 A.2d 355 (1979). The appellate court, in these circumstances, is limited by the determinations of whether the trial court's findings are supported by competent evidence . . . . *Metz Contracting Inc. v. Boxer Heights Inc.,* 261 Pa. Super. 177, 395 A.2d 1373 (1978). It is also clear that in reviewing the findings of a trial judge, the victorious party is entitled to have the evidence viewed in the light most favorable to the successful party . . . and all unfavorable inferences rejected. *Courts v. Campbell,* 245 Pa. Super. 326, 369 A.2d 425 (1976); *Colish v. Goldstein,* 196 Pa. Super. 188, 173 A.2d 749 (1961). This is especially true where the credibility of witnesses is weighed by the lower court. *Brentwater Homes Inc. v. Weibley,* 471 Pa. 17, 369 A.2d 1172 (1977)." *Lee v. Safeguard Mutual Insurance Co.,* 379 Pa. Super. 104, 117-18, 549 A.2d 927, 933-34 (1988). (citations omitted)

When analyzing an age discrimination claim under the Pennsylvania Human Relations Act, 43 Pa.C.S. §§951 through 963, Pennsylvania courts look to federal interpretations of title VII of the Civil Rights Act of 1964 for guidance. *Fairfield Township Volunteer Fire Co. No. 1*

---

evidence that the plaintiff would have received yearly 3 percent increases until retirement to award damages for the alleged pay increases.

*v. Pennsylvania Human Relations Commission,* 530 Pa. 441, 609 A.2d 804 (1992). In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), the United States Supreme Court applied the title VII burden shifting analysis to age discrimination cases. Pennsylvania has also adopted the three-step process for proving discrimination in age discrimination cases. *Jacques v. Akzo International Salt Inc.,* 422 Pa. Super. 419, 619 A.2d 748 (1993). The three steps are: first, the employee must make out a prima facie case of discrimination; second, once a prima facie case is established, the burden shifts to the employer to articulate some nondiscriminatory, permissible reason for firing the employee; third, the employee then has the burden to prove that the nondiscriminatory reason given is pretextual. *Id.*

A prima facie case requires that the plaintiff show the following: (1) that she belongs to a protected class; (2) that she was qualified for the position she held; (3) that she was terminated; and (4) that the employer sought a replacement from outside the protected class. *Id.* Once the plaintiff establishes a prima facie case, a presumption that the employer unlawfully discriminated against the employee is created. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993). The employer then has the burden of producing evidence that it had a legitimate nondiscriminatory purpose for its adverse employment action. *Keller v. Orix Credit Alliance Inc.,* 130 F.3d 1101 (3d Cir. 1997).

The burden then shifts back to the plaintiff to show that the employer' s reason was pretextual. See *Jacques, supra.* To discredit the employer's proffered nondiscriminatory reason, a plaintiff need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons. *Simpson v. Kay Jewelers,* 142 F.3d 639 (3d Cir. 1998). Further, the plaintiff need not produce evidence beyond that which proved

her prima facie case; instead, she must point to "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable fact-finder could rationally find them 'unworthy of credence' and, hence, infer that the proffered nondiscriminatory reason did not actually motivate the employer's action." *Id.* (citations omitted) Nevertheless, the plaintiff bears the burden to prove, by a preponderance of the evidence, that age was a determinative factor in the termination decision. *Hicks,* 509 U.S. at 407. Finally, to successfully discredit the employer's articulated reason, the plaintiff must show that the proffered reason is so plainly wrong that it could not have been the employer's real reason. *Keller v. Orix Credit Alliance Inc.,* 130 F.3d 1101 (3d Cir. 1997).

A plaintiff who successfully proves a case of age discrimination under the PHRA is entitled to compensatory damages. See 43 Pa.C.S. §962(c)(3). Victims of discrimination may recover for emotional distress under the PHRA. *Pennsylvania Human Relations Commission v. Zamantakis,* 478 Pa. 454, 387 A.2d 70 (1978). However, because some degree of emotional distress stems from any violation of a person's rights, recovery of damages for emotional distress requires that the trier of fact find that the plaintiff was a victim of intentional discrimination and that the employer's violation of the anti-discrimination legislation caused the plaintiff to suffer emotional distress. *Durko v. OI-NEG TV Products,* 870 F. Supp. 1278 (M.D. Pa. 1994).

Courts may award back pay in cases regarding discrimination both to restore the injured party to her pre-injury status and to discourage future discrimination. *Consolidated Rail Corp. v. Pennsylvania Human Relations Commission,* 136 Pa. Commw. 147, 582 A.2d 702 (1990). Plaintiff is entitled to back pay from the date of termination

to the date that judgment is entered. *Gallo v. John Powell Chevrolet Inc.,* 779 F. Supp. 804 (M.D. Pa. 1991).

Nevertheless, an injured plaintiff has a duty to mitigate her damages. *Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089 (3d Cir. 1995). But, the defendant bears the burden of proving by a preponderance of the evidence that the plaintiff failed to mitigate her damages. *Id.* The defendant can meet this burden by showing that substantially similar equivalent positions were available and that the plaintiff failed to use reasonable diligence to secure such a position. *Anastasio v. Schering Corp.,* 838 F.2d 701 (3d Cir. 1988).

## DISCUSSION

### *Prima Facie Case*

As described in *Jacques, supra,* the plaintiff must show four factors to make a prima facie case: (1) member of protected class; (2) qualified; (3) terminated; (4) replaced by person outside protected class. The PHRA defines the term "age," in the context of employment discrimination, as any person between the ages of 40 and 70. 43 Pa.C.S. §954(h). See also, *Montour School District v. Pennsylvania Human Relations Commission,* 109 Pa. Commw. 1, 530 A.2d 957 (1987). Here, the plaintiff has proved that she was 59 years old at the time of her termination, and thus a member of the statutorily defined protected class.

Next, the plaintiff proved that she was qualified for the position of loan processor representative I and loan processor/receptionist. The testimony of all of the Sovereign employees who worked in the Easton loan processing office was that the plaintiff was qualified and able to perform all job duties and responsibilities assigned to her. Further, no other Sovereign employee or repre-

sentative, including those who made the decision to terminate her, testified that the plaintiff was not qualified for the position she held.

Third, it is undisputed that the plaintiff was terminated on April 29, 1994.

Finally, the plaintiff must show that Sovereign sought a replacement or replaced her with a person from outside the protected class. Here, although it was bitterly disputed, we find the evidence convincing that the plaintiff was replaced by Amy Sunnergren, who was age 35 on April 29, 1994. There were two Sovereign employees performing loan processing in the Easton office immediately before the plaintiff's termination. At the same time plaintiff was terminated, Sunnergren was informed that her job was being eliminated. She was further informed that she would be transferred to the Easton loan processing office as a loan processor. Therefore, on April 30, 1994, there were still two people doing loan processing in the Easton office; however, the plaintiff, age 59, had been terminated and Amy Sunnergren, age 35, assumed her responsibilities.[2]

## Legitimate Nondiscrimiatatory Purpose

Having found that the plaintiff has made a prima facie case, the burden then shifts to Sovereign to show that it had a legitimate nondiscriminatory purpose for its adverse employment action. See *Keller, supra.* In the case at hand, Sovereign has put forth only one reason for its adverse employment action. Sovereign claims that the

---

2. On this point, we found the testimony of both Sunnergren and the plaintiff convincing. They both testified to a conversation held on the day that plaintiff was terminated, where Sunnergren told the plaintiff that she was upset because she felt she was taking the plaintiff's job and had even been assigned to work at the plaintiff's former desk.

plaintiff was terminated due to a reduction in force. In essence, Sovereign claims that the plaintiff's job was eliminated because of decreased loan volume and because a new phone system made a receptionist unnecessary. This is the same reason which the plaintiff was given for her termination on April 29, 1994.[3]

## Pretext

Sovereign, having arguably offered a legitimate non-discriminatory reason for the plaintiff's termination, now shifts the burden back to the plaintiff to prove by a preponderance of the evidence that the defendant's reason is pretextual. See *Jacques, supra.* This may be accomplished by pointing to weaknesses, implausibilities, inconsistencies, or contradictions in Sovereign's proffered legitimate reason. See *Simpson, supra.* And, the plaintiff bears the difficult burden of proving that the proffered reason is so plainly wrong that it could not have been Sovereign's real reason. See *Keller, supra.*

Here, the plaintiff has met her burden. The numerous inconsistencies in Sovereign's testimony are telling and significant. All three of Sovereign's trial witnesses testified that the plaintiff was performing only secretarial and receptionist duties at the time of her termination. Nevertheless, Sovereign previously admitted in both its answer to the plaintiff's Pennsylvania Human Relations Commission pleading and the complaint in this action, that the plaintiff had performed the duties of a loan processor, among other things. This is particularly significant because everyone who worked in the Easton loan

3. We note at this point, that in light of our findings regarding the fourth prong of the plaintiff's prima facie case, that Sovereign's articulated reason already appears pretextual and thus not legitimate. Nevertheless, because a defendant's burden at this stage is merely to articulate, not prove, a reason for termination, we will continue to analyze the arguments regarding pretext.

processing office testified that the plaintiff was doing loan processing. Sovereign claimed that when Amy Sunnergren was placed in the Easton loan office, as a replacement for plaintiff, that Sunnergren was doing loan processing, a duty which Sovereign argued the plaintiff had not previously performed. This once again conflicts with Sunnergren's testimony, which was that she took over the plaintiff's job.

Another significant inconsistency in Sovereign's testimony developed regarding the plaintiff's request for other employment. Ms. Willever testified that at the time of her termination she asked if any other jobs were available.[4] She was informed at that time that Sovereign did not have any openings for her. Nevertheless, in its answers, Sovereign admitted that jobs were available and that plaintiff offered to "work in any position at any location." Sovereign also admitted that Louella Gray told Ms. Willever that no positions were available, even though a teller position was available. Then, at trial, Gray denied the conversation ever took place, while Stillions claimed that Ms. Willever was offered a teller job but she replied that she had no interest in it. This series of inconsistencies and changing versions of events creates serious doubt regarding the veracity of any of Sovereign's witnesses.

The inconsistency, weakness, and implausibility of Sovereign's proffered reason are clear from the testimony, and therefore, are sufficient to discredit Sovereign's non-discriminatory reason and lead to an inference of discrimination. Sovereign terminated Ms. Willever, a 59-year-old employee who it admitted was a loan processor, and on the same day replaced her with a 35-year-old, less qualified loan processor. At trial, Sovereign's

---

4. This testimony was corroborated by Diana Gerbino.

only proffered legitimate nondiscriminatory reason for Ms. Willever's termination was force reduction and elimination of job duties. Clearly, since Sovereign replaced Ms. Willever with a younger, less qualified person, its proffered reason is pretextual and its true reason was intentional age discrimination.

## Damages

Having successfully proved age discrimination, Ms. Willever is entitled to compensatory damages under the PHRA. Both Ms. Willever and her brother testified that after her termination, Ms. Willever suffered significant emotional distress that manifested itself with physical symptoms. The plaintiff became morose, would cry frequently and was unable to sleep. Further, there was credible evidence that Ms. Willever suffered emotional distress because she was concerned that she would be unable to find employment because of her age. In light of the defendant's intentional discrimination and the plaintiff's emotional distress, particularly that distress related to her age, we find that the plaintiff is entitled to $2,500 damages as compensation.

We also find that the plaintiff is entitled to compensatory damages for lost back and front pay and benefits. The plaintiff's expert, Andrew C. Verzilli, presented credible testimony regarding Ms. Willever's losses. However, although we find substantial evidence of lost wages and benefits, the plaintiff failed to meet her burden with regard to Mr. Verzilli's assumption that the plaintiff would have received 3 percent yearly wage increases for the duration of her employment. Therefore, we hold that Ms. Willever is entitled to $117,248 to compensate her for lost front and back pay and benefits.

Sovereign makes two arguments with regard to damages which must be addressed. First, Sovereign argues

that the plaintiff failed to properly mitigate her damages because she did not find employment which appropriately compensated her. However, Sovereign bears the burden of proving by a preponderance of the evidence that the plaintiff failed to mitigate and they have not done so here. Sovereign did not offer any evidence that Ms. Willever intentionally failed to find appropriate employment or that other appropriate jobs were available to her, other than the evidence it elicited during cross-examination of Ms. Willever and Mr. Verzilli. That evidence is that the plaintiff sent out a number of resumes, went on a series of interviews, and found a job, albeit one that paid significantly less than what Sovereign was paying her. However, in light of Sovereign's own actions and the plaintiff's age, we find that the plaintiff took more than reasonable steps to mitigate her damages.[5]

Finally, Sovereign claims that Ms. Willever's damages should be reduced because Amy Sunnergren, the woman who replaced Ms. Willever, was terminated less than a year after Ms. Willever was terminated, and that the Easton loan processing office was eventually closed, and that, therefore, if Ms. Willever had remained, she would have been terminated. As to the claim regarding Sunnergren, even if this were legally relevant, we find that defendant failed to prove that Sunnergren was terminated because the loan processing job was eliminated. In fact, there was testimony that she was terminated for cause. Finally, regarding the closure of the Easton of-

---

5. It is significant when discussing Ms. Willever's mitigation to note that although Sovereign's admissions and testimony are contradictory, it appears that at the time of Ms. Willever's termination, Sovereign had other positions for which she was qualified. Ms. Willever inquired as to the availability of other positions, but was informed by Sovereign that none were available. We find it difficult to believe that Sovereign would claim Ms. Willever failed to properly mitigate her damages, when the defendant concealed job opportunities that would have allowed the plaintiff to immediately mitigate her damages.

fice, we find that it is simply too speculative for us to conclude that the closure of this office would have led to Ms. Willever's termination. Sovereign could have, but failed, to offer any evidence to the contrary; therefore, we assume Sovereign continues to employ loan processors at its numerous offices and branches, and there was no convincing testimony by Sovereign that Ms. Willever would not have been employed in some other office within one of Sovereign's other branches or offices. Once again, even if Sovereign's legal argument that the closure of the Easton office at a date after the plaintiff's termination has merit, we find that Sovereign simply did not produce the facts necessary to support such an argument.

Wherefore, we enter the following:

## VERDICT

And now, December 23, 1998, for the foregoing reasons, the court finds that the defendant, Sovereign Bank F.S.B., violated the Pennsylvania Human Relations Act by discriminating against the plaintiff, Patricia A. Willever, on the basis of her age.

Sovereign Bank F.S.B. is hereby ordered to pay the plaintiff the sum of $2,500 to compensate her for her emotional distress relating to her illegal termination.

Sovereign Bank F.S.B. is hereby ordered to pay the plaintiff the sum of $117,248 to compensate her for her lost front and back pay and benefits which resulted from her illegal termination.

Therefore, a verdict is entered in favor of plaintiff, Patricia A. Willever, and against the defendant, Sovereign Bank F.S.B., in the amount of $119,748. Any motion for post-trial relief must be filed in accordance with Pa.R.C.P. 227.1.