483 A.2d 1350

Craig CANTWELL, Appellee,

v.

ALLEGHENY COUNTY, a municipal corporation and a
political subdivision of the Commonwealth of
Pennsylvania, Appellant,

v.

WILKINSBURG BOROUGH, a municipal
corporation, Appellant,

**and**

Swissvale Borough, a municipal corporation
and Ronald E. Lees.

Supreme Court of Pennsylvania.

Argued Sept. 14, 1984.

Decided Nov. 20, 1984.

36

James H. McLean, County Sol., Allan J. Opsitnick, Asst. County Sol., Pittsburgh, for Allegheny County.

Herbert Conner, Lawrence Stengel, Dickie, McCamey & Chilcote, P.C., Pittsburgh, for Wilkinsburg Borough.

Paul D. Boas, Pittsburgh, for Craig Cantwell.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue in this negligence case concerns the scope of Restatement (Second) of Torts § 324A (1965). More specifically, we must decide whether county crime labs, which undertake to perform scientific tests at the request of the police, should recognize that the results of those tests are necessary for the protection of criminal suspects who may be affected by them, such that the labs' failure to use due care in performing those tests will render the labs liable in tort to injured criminal suspects.

The complaint in this case sets forth the following relevant facts: [1] A series of rapes, which the police and district attorney believed had been committed by the same person, occurred in the Boroughs of Wilkinsburg and Swissvale from November, 1975 through April, 1976. After four of these rapes, the police from the respective boroughs submitted clothing from the victims to the Allegheny County Crime Lab for testing. In the first case, upon learning that the Crime Lab had found semen on a pair of slacks, the Wilkinsburg police requested that the Crime Lab test the semen to determine the blood group of the assailant. The Crime Lab refused to do so, however, explaining that unless the police had a suspect there was no point in doing the test. In the second case, the Crime Lab found semen on the victim's clothing but did not determine the blood group of the assailant. These items of clothing were eventually returned to the victim. In the third case, the Crime Lab erroneously determined that there was no semen on any of the items submitted. Finally, in the fourth case, a cervical smear was submitted to the Crime Lab along with the victim's clothing. Although the cervical smear tested posi-

---

1. The trial court in this case granted defendants' motions for judgment on the pleadings. This disposition dictates our standard of review: "[A] motion [for judgment on the pleadings] is in the nature of a demurrer; all of the opposing party's well-pleaded allegations are viewed as true but only those facts specifically admitted by him may be considered against him." *Karns v. Tony Vitale Fireworks Corporation*, 436 Pa. 181, 184, 259 A.2d 687, 688 (1969) (citation omitted).

tive for the presence of sperm, the specimen was not blood-typed, nor was the victim's clothing examined.

The complaint further alleges that on April 17, 1976, appellee Craig Cantwell was arrested and charged with eight rapes, including the four rapes outlined above. The Wilkinsburg police then called the Crime Lab to say that they had a suspect and requested that the semen on the slacks of the first victim be blood-typed. The Crime Lab again refused, this time on the grounds that the passage of so much time precluded the performance of an accurate test. In August, this request was renewed and again refused.

According to the complaint, appellee's criminal trial commenced on September 10, 1976. During the course of the trial, an employee of the Crime Lab testified that it was still possible to do blood-typing on the semen specimens still in the possession of the police. As a result of this testimony, blood-typing was finally performed. In the first and fourth rapes, the Crime Lab concluded that appellee could not have been the assailant because the assailant's blood group in both cases was B, while appellee's blood group is A. In the third rape, the clothing from the victim was retested and the Crime Lab determined that sperm were, in fact, present. This clothing was then also blood-typed and the Crime Lab again concluded that appellee could not have been the assailant because the assailant's blood group was B. These tests were then repeated and the results confirmed by the coroner's office.

According to appellee's complaint, in view of these tests, the district attorney's office acknowledged that appellee could not have been the assailant in three of the eight rapes. On September 21, 1976, the district attorney moved to dismiss all of the charges against appellee, and the charges were, in fact, dismissed. Because appellee had never been able to post bail, which had been set at $105,000, he had remained incarcerated from April 17, 1976, the date of his arrest, until September 21, 1976.

In his complaint, appellee finally alleged that his "wrongful and mistaken incarceration, indictment and trial, and the resulting injuries and damages" were caused by the negligence of Allegheny County in that its Crime Lab failed to test all clothing and hospital specimens submitted to it for blood-typing, both initially and after appellee's arrest; incorrectly informed the police that it was too late to perform blood-typing; and failed to perform properly those tests which it undertook to perform.

On December 15, 1977, appellee filed a complaint sounding in negligence.[2] The Court of Common Pleas of Allegheny County granted the motions of appellants Allegheny County and the Borough of Wilkinsburg for judgment on the pleadings and dismissed the complaints against them, on the grounds that Allegheny County owed no duty to appellee, and that Wilkinsburg owed no duty to either appellee or Allegheny County.[3] On appeal, the Superior Court reversed, holding that both the original complaint and the third-party complaint stated causes of action. *Cantwell v. Allegheny County*, 319 Pa.Super. 255, 466 A.2d 145 (1983). We granted allocatur and we now reverse.

In this appeal, appellee asserts that his complaint does, in fact, state a cause of action, and relies upon Restatement (Second) of Torts § 324A (1965), entitled Liability to Third Person for Negligent Performance of Undertaking. This section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his

2. Appellee filed his complaint against a single defendant, Allegheny County. Wilkinsburg Borough, Swissvale Borough and Swissvale Police Chief Ronald E. Lees were subsequently brought into the action as additional defendants; neither Swissvale Borough nor Ronald E. Lees is a party to this appeal.

3. Allegheny County's third-party complaint against Wilkinsburg was premised upon allegations that "[Wilkinsburg is] alone liable to the plaintiff [appellee], or jointly liable with the original defendant [Allegheny County], which is entitled to contribution, or liable over to the original defendant in such an amount as may be recovered by the plaintiff in this suit."

things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Appellee contends that a cause of action exists under this section because prior to his arrest, appellee was clearly within a class of persons—potential defendants in rape cases—to whom the Crime Lab should have foreseen the likelihood of harm if it failed to conduct the proper tests; because after appellee was arrested, a fact of which the Crime Lab was advised, it was foreseeable, if not obvious, that a failure to do proper testing would result in harm to appellee; and finally, because if the proper testing had been performed, even though appellee may still have been arrested, he would have been released immediately following such testing.

Although this Court has never had occasion to consider § 324A of the Restatement, the essential provisions of this section have been the law in Pennsylvania for many years. *See, e.g., Evans v. Otis Elevator Company*, 403 Pa. 13, 18, 168 A.2d 573, 575–76 (1961) ("[A] party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby .... It is not the contract *per se* which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract."); *Pascarella v. Kelley*, 378 Pa. 18, 105 A.2d 70, 73 (1954) (citation omitted) (" '[I]f a party make a gratuitous engagement and actually enters on the execution of the business and so negligently does it from want of care that another

suffers damage thereby, an action will lie for this misfeasance' ....").[4]

In order to state a cause of action under § 324A, a complaint must contain factual allegations sufficient to establish the legal requirement that the defendant has undertaken "to render services to another which he should recognize as necessary for the protection of a third person" (in this case, the plaintiff, appellee). This is essentially a requirement of foreseeability. *See, e.g., Kane v. Hartford Accident and Indemnity Company,* 98 Cal.App.3d 350, 159 Cal.Rptr. 446 (1979) ("The section is predicated upon, and in no way alters, the traditional requirement of a foreseeable harm to a foreseeable class of plaintiffs."). Thus, even if the defendant has undertaken to render a service to another, and the plaintiff (third person) has suffered physical harm, if there was no reason that the defendant should have foreseen that his actions were necessary for the protection of the plaintiff, no cause of action will lie under § 324A.

In this case, we conclude that, as a matter of law, appellee's complaint is insufficient to establish that the Crime Lab's undertaking to render services to the police should have been recognized as necessary for the protection of appellee.

First, we note that the Crime Lab does not exist or render its services for the protection of suspects or potential suspects; rather, its purpose is to assist the police and the Commonwealth in collecting and analyzing evidence which may be relevant in presenting a case to a jury. Thus, in this case there was no reason that the Crime Lab should have recognized that the services it undertook to perform for the Wilkinsburg and Swissvale police were necessary for the protection of appellee even after he had been

4. *Pascarella* simply dealt with an injury arising out of a gratuitous undertaking to perform a service and did not involve injury to a third party. Nevertheless, that case illustrates the point that in Pennsylvania, a gratuitous undertaking to perform a service may give rise to liability.

arrested, much less for the protection of appellee as a potential suspect.

In addition, the discretion of the Commonwealth in conducting criminal prosecutions precludes the Crime Lab's ability to foresee how criminal suspects may be affected by its actions or to recognize that its services may be necessary for the protection of such suspects. No matter how well or how poorly a crime lab performs, it has no control over, or ability to foresee, the disposition of criminal suspects, since the prosecution of suspects in criminal cases depends to a large extent upon the discretion of the police and the district attorney's office.[5]

> The prosecutor ... has responsibility for deciding whether to bring charges and, if so, what charges to bring against the accused, as well as deciding whether to prosecute or dismiss charges or to take other appropriate actions in the interest of justice.

ABA, Standards for Criminal Justice 3–1.1, Commentary. Thus, the mere arrest of a suspect does not automatically result in a trial, nor does the mere existence of evidence which would tend to disprove guilt compel the discharge of a suspect. In each case, the prosecuting authorities have discretion to decide whether to pursue the prosecution, based at least in part upon the amount and the nature of the evidence they have at their disposal. *See* ABA, Standards for Criminal Justice 3–3.9(a) ("A prosecutor should not institute, cause to be instituted, or permit the continued pendency of criminal charges in the absence of sufficient admissible evidence to support a conviction."); ABA, Standards for Criminal Justice 3–3.9, Commentary ("A prosecutor ordinarily should prosecute if, after full investigation, it is found that a crime has been committed, the perpetrator can be identified, and there is sufficient admissible evidence available to support a verdict of guilty.").

██ In this case, even if the Crime Lab had performed blood-typing immediately upon request and received reliable

---

**5.** Indeed, many other individuals, including magistrates, juries and judges, must exercise their discretion throughout the criminal process.

results from such testing, there is no guarantee that appellee would have been discharged. The Commonwealth would still have had the option of trying appellee based upon such other evidence as the eyewitness testimony of the victims,[6] and a conviction based upon such evidence would clearly be supported by sufficient evidence.[7] Since the discretion of the prosecutor always comes between the actions of a crime lab and any harm which may be suffered by a criminal suspect, we conclude that a crime lab's undertaking to render services to the police simply cannot be regarded as necessary for the protection of a particular suspect or class of suspects.

Since appellee has failed, as a matter of law, to allege facts in his complaint which would establish that the actions of the Allegheny County Crime Lab were necessary for his protection, we must conclude that appellee has failed to state a cause of action against Allegheny County. Having so concluded, we also conclude that Allegheny County's third-party complaint against Wilkinsburg, relying as it does upon the alleged negligence of Allegheny County, fails to state a cause of action.

6. We note further that even if the Crime Lab had done the requested testing immediately and this case had then been presented to a jury, the jury would have been under no obligation to believe the results of those tests. "[I]t is hornbook law that a jury is never bound by an expert witness ...." *Commonwealth v. Embry,* 441 Pa. 183, 186, 272 A.2d 178, 179 (1971). Nor would such test results necessarily outweigh other evidence in the possession of the Commonwealth. " '[Juries] may reject in toto the opinion of any witness they disbelieve, and this whether that opinion is contradicted or not.' " *Gaita v. Pamula,* 385 Pa. 171, 175, 122 A.2d 63, 64 (1956) (citation omitted).

7. In his complaint, appellee noted that the police and district attorney believed that all the rapes with which appellee was charged had been committed by the same person. In addition, although this fact is not contained in appellee's complaint, we note that both appellee and Allegheny County explain in their briefs before this Court that appellee was arrested after one of the rape victims saw appellee in a bar and identified him as the man who had raped her. Appellee has, in effect, admitted the legality of this arrest by failing to allege its illegality in his complaint. Thus, while we have no precise knowledge of the other evidence which the Commonwealth could have used against appellee, it appears clear that at least some other evidence did exist upon which the Commonwealth could have relied in presenting a case to a jury.

Accordingly, the order of the Superior Court is reversed and the orders of the Allegheny County Court of Common Pleas, granting the motions of Allegheny County and the Borough of Wilkinsburg for judgment on the pleadings, are reinstated.