583 A.2d 422

Joseph R. DiMARCO,

v.

LYNCH HOMES—CHESTER COUNTY, INC., Lynch Homes,
Inc., Leonard C. Giunta, D.O., Lawrence K. Alwine, D.O.,
and Chester County Medical Associates,

Appeal of Leonard C. GIUNTA, D.O. and Lawrence K.
Alwine, D.O. and Chester County Medical Associates.

Supreme Court of Pennsylvania.

Argued April 6, 1990.

Decided Nov. 29, 1990.

James M. Penny, Jr., Maureen H. McCullough, Philip M. Colicchio, Charles . B. Burr, Philadelphia, for appellants.

Edward T. Feierstein, Philadelphia, for Joseph R. DiMarco.

David L. Brown, Kean K. McDonald, Philadelphia, for Lynch Homes–Chester County, Inc., and Lynch Homes.

Peter C. Gardner, Philadelphia, for amicus–Pa. Trial Lawyers Assoc.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

LARSEN,* Justice.

This appeal presents the issue of whether a physician owes a duty of care to a third party where the physician fails to properly advise a patient who has been exposed to a communicable disease, and the patient, relying upon the advice, spreads the disease to the third party.

On June 18, 1985, Janet Viscichini, a blood technician, went to the Lynch Home in Kimberton, Pennsylvania, to take a blood sample from one of the residents. During the procedure, the patient struck or kicked Ms. Viscichini, whose skin was accidentally punctured by the needle which she had used to take blood from the patient. When Ms. Viscichini learned that the patient was a carrier of hepatitis and other diseases, she immediately sought treatment from Doctors Giunta and Alwine, appellants herein. The appellants advised her that if she remained symptom free for six weeks, she would not have been infected by the hepatitis virus. Ms. Viscichini was not told to refrain from sexual relations for any period of time following her exposure to

---

* This case was reassigned to this writer on Sept. 17, 1990.

the disease, but she practiced sexual abstinence until eight weeks after the exposure. As she had remained symptom free during that time, she resumed sexual relations with appellee, Joseph DiMarco, to whom she was not married. In September of 1985, Ms. Viscichini was diagnosed as suffering from hepatitis B; in December of 1985, appellee was diagnosed as having the same disease.

Appellee brought an action in the Court of Common Pleas of Philadelphia County against appellants and the Lynch Home. Among appellee's claims is the assertion that it was negligent for the appellants not to have warned Ms. Viscichini that having sexual relations within six months of the exposure could cause her sexual partner to contract hepatitis. The trial court granted appellants' preliminary objections and dismissed appellee's complaint with prejudice on the ground that the appellants owed appellee no duty of care because there was no privity between appellee and the appellants. The trial court suggested, however, that a duty may be owed under these facts where the patient and the third party are married.

Appellee filed an appeal to Superior Court, which reversed, holding that the appellants "had a duty to act reasonably in advising [Viscichini] regarding her ability to transmit her communicable disease." *DiMarco v. Lynch Homes—Chester County, Inc.,* 384 Pa.Super. 463, 474 n. 3, 559 A.2d 530, 535 n. 3 (1989). To support its conclusion that appellants owed appellee a duty, Superior Court cites the Restatement (Second) of Torts, § 324A, which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for the physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

   (a) his failure to exercise reasonable care increases the risk of such harm, or

   (b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A. Specifically, Superior Court found that subsection (c) provided the basis for liability in this case. Accordingly, Superior Court found that appellee had pled a cause of action in negligence, and the case was remanded for trial. We granted the appellants' petition for allowance of appeal, and we now affirm the decision of the Superior Court.

On an appeal from the sustaining of preliminary objections in the nature of a demurrer, "we accept as true all well-pleaded material facts set forth in the complaint as well as all inferences reasonably deducible therefrom." *Dercoli v. Pennsylvania National Mutual Insurance Co.*, 520 Pa. 471, 476, 554 A.2d 906, 908 (1989). In the instant case, appellee averred in his complaint that he contracted hepatitis after he had intimate relations with a woman who had been exposed to hepatitis eight weeks prior to the sexual relations; that this woman had been told by her doctors, appellants herein, that if she remained symptom free for six weeks, she would not have been infected by the hepatitis virus; that in reliance upon that advice, the woman abstained from sexual relations for eight weeks; and that the advice of the appellants was wrong in that the waiting period should have been twenty-six weeks.

In *Cantwell v. Allegheny County*, 506 Pa. 35, 41, 483 A.2d 1350, 1353–54 (1984), this Court stated:

> In order to state a cause of action under § 324A, a complaint must contain factual allegations sufficient to establish the legal requirement that the defendant has undertaken "to render services to another which he should recognize as necessary for the protection of a third person" (in this case, the plaintiff, appellee). This is essentially a requirement of foreseeability.

(citation omitted).

When a physician treats a patient who has been exposed to or who has contracted a communicable and/or contagious disease, it is imperative that the physician give his or her

patient the proper advice about preventing the spread of the disease. Communicable diseases are so named because they are readily spread from person to person. Physicians are the first line of defense against the spread of communicable diseases, because physicians know what measures must be taken to prevent the infection of others. The patient must be advised to take certain sanitary measures, or to remain quarantined for a period of time, or to practice sexual abstinence or what is commonly referred to as "safe sex."

Such precautions are taken *not* to protect the health of the patient, whose well-being has already been compromised, rather *such precautions are taken to safeguard the health of others.* Thus, the duty of a physician in such circumstances extends to those "within the foreseeable orbit of risk of harm." *Doyle v. South Pittsburgh Water Co.*, 414 Pa. 199, 207, 199 A.2d 875, 878 (1964). If a third person is in that class of persons whose health is likely to be threatened by the patient, and if erroneous advice is given to that patient to the ultimate detriment of the third person, the third person has a cause of action against the physician, because the physician should recognize that the services rendered to the patient are necessary for the protection of the third person.[1]

1. Mr. Justice Flaherty, in his dissenting opinion hereto, cites the case of *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983) (attorney not liable to beneficiary under will drafted by attorney), to support his assertion that privity is a bar to liability in a negligence action. *Guy* is not the immutable authority on the issue of every professional's liability to a third party. The rationale of *Guy* was bolstered by "important policies." *Id.,* 501 Pa. at 51, 459 A.2d at 746. And when those policies pale in comparison to the harm at issue, this Court has not hesitated to find that lack of privity does not bar a third party from maintaining a cause of action against a professional. *See Hedlund Manufacturing Co. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 539 A.2d 357 (1988) (lack of privity does not bar assignment of claim for legal malpractice; where attorney causes harm to client, no attorney-client relationship remains to be protected, therefore relationship cannot be used as shield to protect attorney from consequences of legal malpractice.) The harm caused by a lawyer to a third party cannot possibly equal the harm that a physician can do to society at large by negligently failing to act to halt the spread of contagious and communicable diseases.

As Superior Court Judge Frank J. Montemuro, Jr., writing for the majority, so cogently noted:

[T]his case involves a communicable disease. It hardly needs to be said that the prevention and control of communicable diseases is a momentous task which is of the utmost importance to the health and welfare of our citizens. The Disease Prevention and Control Law of 1955 requires a physician who treats or examines a person suffering from or who is suspected of having a communicable disease to make a prompt report to the local board of health or, if necessary, to the State Health Center of the Department. *See* 35 P.S. § 521.3; 28 Pa.Code § 27.21(a) and (b). We note that 28 Pa.Code § 27.115 specifically requires physicians to report cases of Hepatitis B. Further, several provisions of the Pennsylvania Code set forth procedures to be followed to prevent the contamination of our blood banks with blood from donors who suffer from or may have been exposed to viral hepatitis. *See* 28 Pa.Code §§ 25.71 and 30.30(7)(i).

384 Pa.Super. 463, 470, 559 A.2d 530, 533 (1989) (footnote omitted). Clearly, such measures are mandated by law specifically to protect *third persons* who will come into contact with those who have been exposed to or who have contracted a communicable disease.[2]

We find, therefore, on the basis of the averments set forth in appellee's complaint, that appellee has stated a cause of action against the appellants. We further hold that the class of persons whose health is likely to be threatened by the patient includes *any* one who is physically intimate with the patient. Those, like the trial court, who

---

**2.** The Dissenting Opinion suggests that finding a cause of action in this case and in similar cases will cause professionals to "narrow their inquiries into the client or patient situation, to the detriment of the client or patient, so as to avoid possible liability toward third parties which might come from knowing 'too much.'" Dissenting op. at 426. Such a danger is simply not present here. When treating a patient with a communicable disease, a physician is acutely aware of the possible risk to third persons. Therefore, no such additional inquiry is necessary; nor is it conceivable that any physician, under similar circumstances, would limit his or her treatment of a patient so as to avoid possible liability.

insist that we cannot predict, or foresee, that a patient will engage in sexual activity outside of the marital relationship and that thus, we need not protect those who engage in "casual" sex, are exalting an unheeded morality over reality.[3]

Accordingly, we affirm the order of the Superior Court reversing and remanding for further proceedings.

FLAHERTY, J., filed a dissenting opinion joined by NIX, C.J., and ZAPPALA, J.

FLAHERTY, Justice, dissenting:

The majority cites *Cantwell v. Allegheny County*, 506 Pa. 35, 483 A.2d 1350 (1984) for the proposition that a professional may be held liable to a third party under the terms of Restatement of Torts (Second) § 324A if the professional has undertaken to render services to another which he should recognize as necessary for the protection of a third person. In doing so, the majority misstates the rule of *Cantwell*. *Cantwell* was written in the context of its facts, not involving professional services, and close on the heels of *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983), in which this Court clearly set out the requirements for the liability of professionals to third parties on a negligence theory.

In *Guy v. Liederbach*, a beneficiary who was also named executrix under a will brought suit against a Pennsylvania attorney who drafted the will and directed her to witness it, which, under applicable New Jersey law, voided her legacy. In an action brought by the beneficiary against the attorney, this Court held that a legatee of a will may bring an action as an intended *third party beneficiary of the con-*

---

**3.** The physician who fails to properly inform his or her patient about the communicability of the disease that the patient has contracted or to which the patient has been exposed should be at least as culpable as the hacker who unleashes a virus that spreads from computer to computer destroying computer programs and files as it travels. Computer hackers are subject to criminal sanctions and civil sanctions. We can at least assess civil sanctions where a physician's action or inaction causes the spread of death and disease.

*tract* between the attorney and the testator, pursuant to § 302 of the Restatement (Second) of Contracts (1979), but that "important policies require privity (an attorney-client or analogous professional relationship, or a specific undertaking) to maintain *an action in negligence* for professional malpractice...." 501 Pa. 47, 51, 459 A.2d 744, 746 (1983) (emphasis added). This holding was consistent with *Lawall v. Groman*, 180 Pa. 532, 37 A. 98 (1897), in which this Court, in dicta, stated that an attorney has a duty to exercise reasonable care with respect to third parties and may be liable for misfeasance if (1) the attorney undertook to perform a specific service for a third party, (2) the third party relied on this service, and (3) the attorney was aware of the reliance. Building on this, we stated in *Guy v. Liederbach:*

> Thus, we retain the requirement that plaintiff must show an attorney-client relationship or a specific undertaking by the attorney furnishing professional services, as in *Lawall*, as a necessary prerequisite for maintaining such suits in trespass on a theory of negligence.

501 Pa. at 58, 459 A.2d at 750.[1]

In this case, as in *Liederbach*, the professional service was not performed for the third party, and the doctor did not even know of the existence of the third party.[2] Thus, there was neither privity nor a specific undertaking in favor of the third party, as is required under *Liederbach*, and in the absence of privity or specific undertaking, the doctors had no duty of care, and thus no liability, with respect to DiMarco.

As we stated in *Liederbach*, the dangers of adopting a negligence concept of duty analyzed in terms of scope of the risk or foreseeability are considerable and are to be avoided. These dangers include not only the imposition of

1. Our holding in *Liederbach* was not restricted to lawyers, but was intended to apply to "an attorney/client or analogous professional relationship or specific undertaking." 501 Pa. at 51, 459 A.2d at 746.

2. Although DiMarco's brief argues that the doctors knew of DiMarco's existence and his identity as a sexual partner of Ms. Viscichini, such knowledge is not alleged in the complaint.

liability in favor of third parties in situations which are beyond the control of the professional rendering the service,[3] but also the prospect of inducing professionals to narrow their inquiries into the client or patient situation, to the detriment of the client or patient, so as to avoid possible liability toward third parties which might come from knowing "too much."[4] In failing to apply the rule of *Liederbach* the majority has not only ignored this Court's own caselaw, but has done a disservice to plaintiffs of the sort it seeks to protect.

Thus, I dissent.

NIX, C.J., and ZAPPALA, J., join this dissenting opinion.

---

3. The professional has no control over the client's or patient's disclosures of professional advice, the third parties to whom the advice is disclosed, the nature or circumstances of the communications, the accuracy of what is disclosed, the number of persons to whom disclosures are made, or when disclosures are made. Thus, the professional, under the majority's view, would be subject to an unpredictable number of suits filed by an unpredictable number of persons, some or all of whom may be unknown to the professional, at almost any time, claiming that they learned of and relied on the professional's advice.

4. The more a professional knows about his client's or patient's situation, the more likely he is to be able to render valuable services, but also the more likely it is that he will learn things which may affect third parties. If liability were imposed for harm which might befall one or more of these third parties, a professional would be forced to analyze each client or patient situation with respect to potential third party risk and to speculate as to the nature, seriousness, likelihood, frequency of risk, the patient's circumstances which might trigger the risk, and the third parties who might be exposed to risk. Obviously, such an undertaking would require much more information from the client or patient, would be very costly and time consuming, and would inevitably result in the sort of narrowing of inquiry referred to above.