675 A.2d 314

**Grace and Daniel TROXEL, Administrators of the Estate of Trevor Robert Troxel, Deceased, Appellants,**

v.

**A.I. DUPONT INSTITUTE, Ches–Penn Health Services, Inc. and Kevin Browngoehl, M.D.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1995.

Filed April 17, 1996.

72

74

Nancy L. Goldstein, Philadelphia, for appellants.

Jay Lambert, Philadelphia, for Ches–Penn Health Services, appellee.

Joseph H. Foster, Philadelphia, for Browngoehl, appellee.

Before KELLY, FORD ELLIOTT and OLSZEWSKI, JJ.

FORD ELLIOTT, Judge:

In this admittedly tragic case, we are asked to decide, under Pennsylvania law, the nature and extent of a physician's duty to third persons when the physician undertakes the treatment and care of a patient with a contagious disease. Instantly, the trial court determined as a matter of law that a doctor has no duty to warn a patient with a highly contagious but ubiquitous viral infection that the patient should avoid contact with pregnant women whose unborn infants may be at risk of death or debilitating birth defects if they are exposed to the virus. The trial court granted appellees Ches–Penn Health Services and Kevin Browngoehl, M.D.'s motion for summary judgment basing its decision on this court's opinion in *Troxel v. A.I. duPont Institute,* 431 Pa.Super. 464, 636 A.2d 1179 (1994) (*Troxel I*), *allocatur denied,* 538 Pa. 648, 647 A.2d 903 (1994). We reverse.

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.Civ.P.Rule 1035(b). The trial court must view the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party, with any doubt resolved against the moving party. The trial court will be overturned only if there has been an error of law or a clear abuse of discretion. *First Wisconsin Trust Co. v. Strausser,* 439 Pa.Super. 192, 197, 653 A.2d 688, 691 (1995) (citations omitted). Our review of the record is, however, plenary. *Keselyak v. Reach All, Inc.,* 443 Pa.Super. 71, 74–75, 660 A.2d 1350, 1352 (1995).

The facts and procedural history, taken from *Troxel I,* are set forth below:

On October 30, 1987, Mary Siple, a non-party, gave birth to a female child, Ashley [Smith]. Because Ashley was born with microcephaly [footnote omitted] and a pes cavus deformity of the leg, [footnote omitted] she was taken for treatment to Ches–Penn Health Services, Inc., a Pennsylvania medical services center, where she was examined by Dr. Kevin Browngoehl, a Pennsylvania physician. Dr. Browngoehl suspected that Ashley was suffering from cytomegalovirus (CMV) [Footnote] and referred her to [the A.I.] duPont [Institute] for additional tests. At duPont, Ashley was seen by Dr. Borkowski, a Delaware neurologist. The tests conducted at duPont, under Dr. Borkowski's supervision, confirmed a diagnosis of CMV. In the meantime, Ches–Penn discovered that Ashley's mother, Mary Siple, was also suffering from CMV.

Grace Troxel was a long time friend of Mary Siple, and, in November, 1987, she became pregnant. During her pregnancy she frequently visited Mary Siple and often assisted in feeding and bathing Ashley and in changing her diapers. In May, 1988, Mary Siple learned, allegedly for the first time, that CMV was contagious and posed a special danger to pregnant women. By this time, Grace Troxel had entered the third trimester of her pregnancy and was already infected with CMV. On August 19, 1988, she gave birth to a

son, Trevor. Unfortunately, Trevor had acquired CMV from his mother in utero and died from the disease on November 17, 1988.

Grace and Daniel Troxel filed wrongful death and survival actions on behalf of their deceased son and also for the infection of Grace Troxel with CMV. They named as defendants duPont and Ches–Penn, which subsequently joined Dr. Browngoehl as an additional defendant. The essence of plaintiffs' claim was that defendants had failed to inform Mary Siple of the contagious nature of CMV and of the risk to pregnant women who might come into contact with her infant. Dr. Browngoehl filed a cross-claim against the remaining defendants pursuant to Pa.R.C.P. 2252(d).

[Footnote] CMV is a ubiquitous disease which is a member of the herpetoviruses group that causes an enlargement of the cells of various organs. In infants, it may result in jaundice, enlargement of the spleen and liver, thrombocytopenic purpura, and possibly mental retardation. The disease is spread by prolonged intimate contact with infected body fluids. Ausman and Snyder, 7 *Medical Library—Lawyers Edition* § 17:29 (1991).

*Troxel I, supra* at 467, 636 A.2d at 1180. We would include the additional fact, taken from Dr. Browngoehl's May 3, 1988 chart notes, that Mary Siple told Dr. Browngoehl she was looking for work, and would be leaving Ashley with a friend.

The issue before the *Troxel I* court was whether the trial court properly entered summary judgment in favor of the Delaware defendant, duPont. In order to make that determination, the *Troxel I* court had to decide whether to apply the substantive law of Delaware or Pennsylvania. Finding that the substantive law of Delaware applied, the *Troxel I* court then determined that, under Delaware law, no cause of action existed because no duty existed on the part of the medical providers toward third persons, absent a special relationship between the doctor and the patient or the doctor and the third person. *Id.* at 471–72, 636 A.2d at 1183. In drawing this conclusion, the *Troxel I* court relied in part upon The Restatement (Second) of Torts, § 315, and Delaware cases in which it was applied. Section 315 states, "There is no duty so to control the conduct of a third person as to prevent him from

causing physical harm to another unless (a) a special relation exists between the actor and the third person . . ., or (b) a special relation exists between the actor and the other. . . ." Section 319 states that a special relationship exists where one "takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled. . . ." Restatement (Second) of Torts § 319 (1965). The *Troxel I* court then noted that Delaware courts had found such a special relationship in a case in which a psychiatrist knew of the dangerous propensities of his patient, and therefore had a duty toward third persons in the treatment and discharge of the patient. *Troxel I, supra* at 471–72, 636 A.2d at 1183, *citing Naidu v. Laird,* 539 A.2d 1064 (Del.Supr.1988). Nevertheless, the *Troxel I* court found *Naidu* inapposite.

The *Troxel I* court then analyzed whether § 324A of the Restatement conferred a duty upon physicians toward third parties under Delaware law. Section 324A provides:

> § 324A. Liability to Third Person for Negligent Performance of Undertaking
>
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

*Troxel I, supra* at 473–74, 636 A.2d at 1183–84, *quoting* Restatement (Second) of Torts, § 324A. Once again, the *Troxel I* court determined that Delaware courts would not impose upon duPont a duty toward Grace Troxel and her unborn child under § 324A.

The *Troxel I* court then noted that, in contrast to Delaware, the Pennsylvania Supreme Court had found that a physician owed a duty to third parties who were not his patients under § 324A in *DiMarco v. Lynch Homes—Chester County, Inc.,* 525 Pa. 558, 583 A.2d 422 (1990) (*DiMarco II* ). In *DiMarco II,* a phlebotomist contracted hepatitis-B from a nursing home patient when the needle she was using to withdraw a sample of the patient's blood pricked her skin. She immediately sought medical advice from defendant physicians, who told her that if she remained symptom-free for six weeks, she would not have been infected with the virus. *Id.* at 559–60, 583 A.2d at 423. She was also told to refrain from sexual relations for the six-week period;[1] however, she decided to abstain from sex with her boyfriend for eight weeks. At the end of the eight-week period, when she was still symptom-free, she resumed sexual relations with her boyfriend. One month later, she was diagnosed with hepatitis-B, and three months after that, her boyfriend, the plaintiff in *DiMarco II,* was similarly diagnosed. DiMarco brought an action against the doctors and the nursing home, alleging their negligence in not having warned the technician that having sexual relations within six *months* of exposure to hepatitis-B could expose her sexual partner to the disease as well. *Id.*

In sustaining defendants' preliminary objections, the trial court relied upon the physician's lack of control over the sexual conduct of his patients and the public policy against non-marital sex. *DiMarco I, supra* at 465–66, 559 A.2d at 531, *citing* trial court opinion at 4.

---

**1.** We note that the superior court opinion indicates the phlebotomist was told to refrain from sexual relations for six weeks, and also indicates that the doctors knew both the phlebotomist and DiMarco personally and " 'were aware or had reason to know that [DiMarco] and [the phlebotomist] were intimate.' " *DiMarco v. Lynch Homes— Chester County, Inc.,* 384 Pa.Super. 463, 466, 559 A.2d 530, 531 (1989) (*DiMarco I* ), *quoting* trial court opinion at 2, notes of testimony, 5/19/88 at 34. The supreme court opinion, on the other hand, indicates the phlebotomist was not told to refrain from sexual relations for any specific period of time; rather, that opinion indicates she was merely told she would not have been infected if she remained symptom-free for six weeks. *DiMarco II supra* at 559–60, 583 A.2d at 423. For purposes of our analysis, we adopt the facts as set forth in *DiMarco I.*

On appeal, however, we reversed the trial court. While first recognizing the general rule that the duty of a physician arises from the physician/patient relationship, *citing Craddock v. Gross,* 350 Pa.Super. 575, 504 A.2d 1300 (1986), and *Ervin v. American Guardian Life Assurance Company,* 376 Pa.Super. 132, 545 A.2d 354 (1988), we went on to find a duty, nonetheless, between the defendant/doctor and DiMarco based on Restatement § 324A(c). Specifically, this court found a duty on the part of the phlebotomist's doctors to DiMarco under § 324A(c), providing he could prove that the physicians gave the phlebotomist erroneous information regarding the transmission of the disease, and that DiMarco justifiably relied upon that advice to his detriment. *Id.* at 473–74, 559 A.2d at 535.

Justice Montemuro opined as follows:

In the case at bar, we find that the appellant has stated a cause of action, pursuant to Section 324A, even though there was no physician-patient relationship between the appellant and [the phlebotomist's] physicians. In *Cantwell v. Allegheny County,* 506 Pa. 35, 483 A.2d 1350 (1984), our Supreme Court recognized that the essential provisions of Section 324A 'have been the law of Pennsylvania for many years.' *Id.* at 40, 483 A.2d at 1353. The present case is distinguishable from *Ervin* and *Craddock, supra,* which also lacked a physician-patient relationship between the plaintiff and the defendant, for a number of significant reasons. First, a physician-patient relationship did exist in the present case between [the phlebotomist] and her physicians. [The phlebotomist] visited her physicians for the purpose of receiving professional treatment and medical advice when she knew that she may have been exposed to hepatitis. Second, this case involves a communicable disease. It hardly needs to be said that the prevention and control of communicable diseases is a momentous task which is of the utmost importance to the health and welfare of our citizens. . . .

. . . .

Although there is a dearth of case law addressing medical malpractice in relation to communicable disease, several

> other jurisdictions have considered cases similar to the case at bar. Although none of these cases rely on Section 324A of the Restatement (Second) of Torts, we find their reasoning and underlying public policy considerations persuasive. . . .

*DiMarco I, supra* at 469–70, 559 A.2d at 533 (footnote omitted). The court then looked to cases from other jurisdictions in which courts have found a duty to a third person based on the nature of the disease or the relationship of the third person to the patient. *See infra. DiMarco I* specifically limited its decision to the facts of that case, noting that it left open the question "whether a duty on the part of a physician will be recognized if a third party contracts a communicable disease from a patient who is acting on incorrect medical advice, where the third party was never advised of the medical advice by the patient." *Id.* at 473 n. 3, 559 A.2d at 535 n. 3.

On grant of allocatur, the supreme court affirmed this court's decision in *DiMarco I,* holding:

> If a third person is in that class of persons whose health is likely to be threatened by the patient, and if erroneous advice is given to that patient to the ultimate detriment of the third person, the third person has a cause of action against the physician, because the physician should recognize that the services rendered to the patient are necessary for the protection of the third person.

*DiMarco II, supra* at 562, 583 A.2d at 424–25. The *DiMarco II* court thus clearly expanded the holding of *DiMarco I* to include not only those third persons, such as DiMarco, who were aware of the medical advice, but any third person, whether aware of the medical advice or not.

█ In interpreting this holding of the supreme court, the *Troxel I* court appears to have construed the language narrowly in stating that *DiMarco II* stood only for the proposition that "a physician could be held liable to a third person for incorrect advice given a patient regarding a communicable disease (hepatitis) when the physician knew of the patient's sexual partner and should have foreseen that the third party

would rely upon the physician's advice to the patient." *Troxel I, supra* at 471–72, 636 A.2d at 1183. *Troxel I*'s interpretation clearly required knowledge of the risk to a particular third person.[2] In fact, however, neither *DiMarco I* nor *DiMarco II* made mention of the requirement that the physician be aware of the third person. Instead, this court required only that the third person be aware of the medical advice and rely upon it, while our supreme court required only that the third person be "in that class of persons whose health is likely to be threatened by the patient" with a communicable disease. *DiMarco II, supra* at 562, 583 A.2d at 424. Lest any doubt remain, the supreme court added, "We further hold that the class of persons whose health is likely to be threatened by the patient [in a hepatitis case] includes *any* one who is physically intimate with the patient." *Id.* at 563, 583 A.2d at 425 (emphasis in original). As the *DiMarco II* court observed, the duty of the physician treating a patient with a communicable disease is to prevent the spread of the disease, not for the benefit of the patient, whose health has already been compromised, but for the benefit of those third parties "within the foreseeable orbit of risk of harm." *Id.* at 562, 583 A.2d at 424, quoting *Doyle v. South Pittsburgh Water Co.*, 414 Pa. 199, 207, 199 A.2d 875, 878 (1964).

■ While the *Troxel I* court opted to limit the supreme court's holding in *DiMarco II*, we are not deterred in our analysis because *Troxel I*'s interpretation of *DiMarco II* is not the law of the case instantly. The sole question before the *Troxel I* court was whether the trial court properly entered summary judgment in favor of the *Delaware* defendant, *A.I. duPont Institute*. Once the *Troxel I* court determined that Delaware law applied, its interpretation of Pennsylvania law became merely advisory. As a result, contrary to the trial court's reliance, *Troxel I*'s interpretation of *DiMarco II* is not the law of this case. *See Banker v. Valley Forge Insurance Co.*, 401 Pa.Super. 367, 374, 585 A.2d 504, 508 (1991) (" 'Law of the case ... means that whatever is once irrevocably established as the controlling legal rule of decision *between the*

---

**2.** As to the validity of this interpretation, see footnote 4, *infra*.

*same parties in the same case continues to be the law of the case....'"), allocatur denied,* 529 Pa. 615, 600 A.2d 532 (1991). We also agree with appellant that the *Troxel I* court's analysis of *DiMarco II* is not binding on this court because it is dicta.

■ Having found that *Troxel I* does not control the outcome of the instant case, we must next decide whether, under Pennsylvania law, the Troxels have a cause of action on behalf of their deceased son against Ashley Smith's Pennsylvania medical providers. The essence of this issue is whether Dr. Browngoehl owed a duty to Trevor Troxel. As our supreme court stated:

> 'In determining the existence of a duty of care, it must be remembered that the concept of duty amounts to no more than "the sum total of those considerations of policy which led the law to say that the particular plaintiff is entitled to protection" from the harm suffered. To give it any greater mystique would unduly hamper our system of jurisprudence in adjusting to the changing times. The late Dean Prosser expressed this view as follows:
>
>> These are shifting sands, and no fit foundation.... Duty is only a word with which we state our conclusion that there is or is not to be liability; it necessarily begs the essential question.... In the decision whether or not there is a duty, many factors interplay: The hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community, "always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind." '

*Gardner by Gardner v. Consolidated Rail Corp.,* 524 Pa. 445, 454–55, 573 A.2d 1016, 1020 (1990), *quoting Sinn v. Burd,* 486 Pa. 146, 164, 404 A.2d 672, 681 (1979) (other citations omitted).

Initially, appellants concede that the reliance prong of 324A(c) upon which the *DiMarco* courts relied is not available to them instantly to establish a duty owed to Trevor Troxel. Dr. Browngoehl gave no information to Mary Siple about the contagious nature and risk implications of Ashley's disease. However, appellants contend that this fact should not preclude a finding of liability. Rather, they argue that the duty in *DiMarco II* was imposed on the basis of the foreseeability of the harm and not on the basis of reliance.[3]

Appellants cite the following language from *DiMarco II* in support:

> When a physician treats a patient who has been exposed to or who has contracted a communicable and/or contagious disease, it is imperative that the physician give his or her patient the proper advice about preventing the spread of the disease. Communicable diseases are so named because they are readily spread from person to person. Physicians are the first line of defense against the spread of communicable diseases, because physicians know what measures must be taken to prevent the infection of others. The patient must be advised to take certain sanitary measures, or to remain quarantined for a period of time, or to practice sexual abstinence or what is commonly referred to as 'safe sex.'

> Such precautions are taken *not* to protect the health of the patient, whose well-being has already been compromised, rather *such precautions are taken to safeguard the*

**3.** The amicus brief filed on behalf of the Pennsylvania Trial Lawyers Association argues that the facts of this case fall within the meaning of 324A(c). Mrs. Troxel relied on the lack of information given to Mary Siple. This reliance is evidenced by Mrs. Troxel immediately altering her behavior once informed of the contagious nature of the disease. We believe that the point is well taken, and in the context of malpractice as between doctor/patient, a failure to warn, to diagnose, or to disclose is considered misfeasance rather than nonfeasance. However, we can find no authority to support nonfeasance as a basis for liability under 324A(c). As set out in § 314 of the Restatement, absent special circumstances, "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Restatement (Second) of Torts, § 314 (1965).

*health of others.* Thus, the duty of a physician in such circumstances extends to those 'within the foreseeable orbit of risk of harm.'

*DiMarco II, supra* at 560–62, 583 A.2d at 424, *quoting Doyle, supra* at 207, 199 A.2d at 878 (emphasis in original).

We agree with appellants' analysis of *DiMarco II* and decide that reliance was not the sole basis upon which the duty was imposed. Rather, the court recognized a duty owed by the physician based upon the important role of the medical community in preventing the spread of communicable diseases, a duty that extends to all those within the foreseeable orbit of risk of harm. Our interpretation is supported by subsequent decisions of this court which distinguished the *DiMarco* decisions on the basis of lack of foreseeable risk. For instance, in *Crosby by Crosby v. Sultz,* 405 Pa.Super. 527, 592 A.2d 1337 (1991), we found no duty on the part of a physician to a third party injured by the diabetic patient in an automobile collision on the basis that the doctor failed to report the patient's condition to the Department of Transportation:

> Even if Dr. Sultz *did* have a duty to disclose Jackson's name to the Department of Transportation, we can find no logical connection between that obligation and a duty of care to the Crosbys. The Crosbys were *not* foreseeable victims of *Dr. Sultz's* actions or inactions.... To discount the important element of foreseeability here is effectively to overrule well-established and precedential tort law, as well as to extend liability limitlessly to treating physicians vis-a-vis third party victims.
>
> . . . .
>
> We note here that diabetes is not a communicable disease, such as hepatitis. *See DiMarco, supra.* Thus, we refrain from likening the instant circumstances to those in *DiMarco.*

*Crosby by Crosby,* 405 Pa.Super. at 543–44, 592 A.2d at 1345–46 (emphasis in original) (footnotes omitted). *See also Waddell v. Bowers,* 415 Pa.Super. 469, 476–77, 609 A.2d 847, 851 (1992) (Waddell was a passenger in a vehicle which was struck

by another vehicle being operated by Bowers, a woman suffering from hypoglycemic shock. Waddell sued Bowers, who added as third-party defendants the dentist and hospital which allowed Bowers to drive, despite knowing that she was an insulin-dependent diabetic who had become ill while being treated. The *Waddell* court concluded, "Unlike treatment of a contagious disease, we cannot readily conclude that treatment of a hypoglycemic attack is necessary for the protection of others. Accordingly, [Bowers] has not alleged facts sufficient to establish that [the dentist and the hospital] had undertaken to render services to [Bowers] that they should have recognized as necessary for the protection of Waddell."), *allocatur denied,* 533 Pa. 613, 618 A.2d 402 (1992).

▆▆▆▆ Our next task, then, is to determine whether appellants have alleged sufficient facts to establish that appellees should have foreseen that their treatment of Ashley Smith was necessary for the protection of third persons such as Trevor Troxel. *Waddell, supra* at 472–74, 609 A.2d at 849. Appellants argue that foreseeability is an issue for the jury, and thus should not have been decided in a motion for summary judgment. We disagree. Under *DiMarco II,* a determination of foreseeability is the essence of a determination of duty. A finding that appellees owed a duty to appellants is a condition precedent to a finding of negligence; without a finding of duty, the issue of breach of duty cannot be submitted to the jury. *See Shaw v. Kirschbaum,* 439 Pa.Super. 24, 29, 653 A.2d 12, 15 (1994), *allocatur denied,* 541 Pa. 652, 664 A.2d 542 (1995).

The medical community is well aware of the risks CMV poses to *in utero* infants. While it is true that Dr. Browngoehl and his associates had no way of knowing the identity of particular pregnant women whose infants would be at risk from exposure to Ashley, and therefore could not possibly be expected to warn the pregnant women, nevertheless, these doctors knew, or should have known, that a class of persons very likely to come into contact with a young mother and her new baby were at risk, and that the risk was deadly. Despite

this awareness, neither duPont, Dr. Browngoehl, nor anyone else at Ches–Penn advised Mary Siple of the contagious nature of CMV, or of the fact that she and Ashley should avoid close contact with pregnant women. (Trial court opinion, 2/24/95 at 3.) As a result, Mary Siple continued to associate with her close friend, Grace Troxel, who had become pregnant in November of 1987 and who would frequently feed, change, hold, and kiss Ashley during visits with Mary and Ashley. (*Id.*) Based upon the analysis articulated by the *DiMarco II* court as applied to the facts alleged by appellants, it is clear that Grace Troxel's unborn son Trevor was within that "class of persons whose health [was] likely to be threatened by the patient...." and thus he was within the " 'foreseeable orbit of risk of harm[.]' " *DiMarco II, supra* at 562, 583 A.2d at 424.

As already noted, this court, in finding a duty on the part of the physicians to DiMarco in *DiMarco I,* based that duty in part on § 324A(c) of the Restatement, and in part upon its review of the case law from other jurisdictions. Numerous courts throughout the country have addressed the issue of whether a doctor or other health care provider is liable to a third party who contracts a contagious disease from the doctor's patient. *See* Tracy A. Bateman, Annotation, *Liability of Doctor or Other Health Practitioner to Third Party Contracting Contagious Disease from Doctor's Patient,* 3 ALR 5th 370 (1992). The *DiMarco I* court found particularly persuasive the reasoning and underlying public policy considerations in *Wojcik v. Aluminum Company of America,* 18 Misc.2d 740, 183 N.Y.S.2d 351 (1959).

In *Wojcik,* Joseph Wojcik and his wife Caroline sued Mr. Wojcik's employer for failing to inform him that the results of his chest X-ray, taken during the course of a physical examination at work, indicated he had tuberculosis. The physician who read the X-ray was apparently an agent of the employer, whose practice it was to inform employees of any physical problems. Because Joseph Wojcik was not informed he had a contagious disease, his wife failed to take steps to protect herself from contracting the disease. In holding that Caroline Wojcik had stated a claim, the *Wojcik* court opined:

'In 41 AmJur., Physicians and Surgeons, § 101, p. 216, it is stated: "One who by reason of his professional relations is placed in a position where it becomes his duty to exercise ordinary care to protect others from injury or danger is liable in damages to those injured by reason of his failure to do so." The policy of the law in general is stated in 70 C.J.S. Physicians and Surgeons § 48, p. 970, as follows:

It is the duty of a physician who is attending a patient afflicted with a contagious or infectious disease to exercise care in advising and warning members of the family and others who are liable to exposure of the existence and nature of the danger from the disease, to avoid doing any act which would tend to spread the infection, and to take all necessary precautionary measures to prevent its spread to other patients attended. A physician who fails to give such warning is negligent....'

*DiMarco I, supra* at 471, 559 A.2d at 533–34, *quoting Wojcik, supra* at 746–47, 183 N.Y.S.2d at 358–59.[4] The *DiMarco II* court, approving this analysis, quoted *DiMarco I* for the proposition that "the prevention and control of communicable diseases is a momentous task which is of the utmost importance to the health and welfare of our citizens." *DiMarco II, supra* at 563, 583 A.2d at 425, *quoting DiMarco I, supra* at 470, 559 A.2d at 533.

**4.** The *DiMarco I* court also cited with approval the courts' analyses in two additional cases of *Hofmann v. Blackmon,* 241 So.2d 752 (Fla. 4th DCA 1970) *certiorari denied sub nom. Blackmon v. Hofmann,* 245 So.2d 257 (1971), and *Shepard v. Redford Community Hospital,* 151 Mich.App. 242, 390 N.W.2d 239 (1986), *appeal denied,* 431 Mich. 872, 430 N.W.2d 458 (1988). In *Hofmann,* the court found a duty owed by a physician to a minor child who was a member of the immediate family and living with a patient suffering from tuberculosis both to diagnose the disease and to inform those in charge of the child of the precautions necessary for the child's protection. In *Shepard,* it was decided that a hospital owed a duty to the child of a patient whose spinal meningitis went undiagnosed, so that she returned home from the hospital and infected the child, who subsequently died from the disease. We recognize that these cases involved a special relationship between the patient and the third party of which the physician had knowledge, and are thus factually distinguishable from the case instantly. Nevertheless, the special relationship was not the basis upon which these cases were cited in *DiMarco I,* and clearly the supreme court in *DiMarco II* did not require such a relationship in order to find a duty.

■ As a result of the foregoing, we have no doubt that a fair reading of the *DiMarco* decisions extends the duty of a physician to third persons in instances where the physician undertakes the treatment of a patient with a communicable or contagious disease. This duty encompasses a duty to correctly inform the patient about the contagious nature of the disease in order to prevent its spread to those who are within the foreseeable orbit of risk of harm.

Appellees argue that even if *DiMarco* has imposed such a duty, it does not encompass a ubiquitous disease such as CMV. Framing this question within the procedural posture of this case, we need only decide whether the trial court erred as a matter of law when it found that CMV was not a contagious disease within the meaning of *DiMarco*. If CMV is a disease contemplated by *DiMarco,* then its ubiquitous nature is better addressed in the context of whether Dr. Browngoehl's conduct fell below the standard of care of a physician whose patient has a contagious disease.

■ Initially, it is conceded by both appellants and appellees that CMV is a contagious disease; that it exists in the general population; that while it is generally harmless and often may go unnoticed in most individuals, it may have severe consequences for certain at-risk groups, such as those whose immune systems have already been compromised, pregnant women and newborns. The risks are not obscure but rather are well recognized in the literature of the medical community. The American Academy of Pediatrics Committee on Infectious Diseases, while advocating no special screening or quarantining of children with CMV in daycare centers and schools, does clearly recognize that there is a risk to pregnant women who care for CMV children and that they should be urged to practice good hygiene. (Plaintiffs' Answer to Motion for Summary Judgment of Defendant, Ches–Penn Health Services, Inc. and Additional Defendant Kevin Browngoehl, M.D., Exhibit H, Report of the Committee on Infectious Diseases at 141–42 (20th ed., 1986).) Additionally, appellants have cited to numerous procedures and regulations governing hospitals which recognize the risk factors and preventive measures

connected with CMV. (Appellants' brief at 16, *citing, inter alia*, the Centers for Disease Control (CDC) Guidelines.) We agree with appellees that these regulations do not impose a duty on physicians; nevertheless, they clearly suggest common knowledge in the medical community of the nature of CMV and its risks to pregnant women and their unborn children.

While we recognize that the communicable disease in *DiMarco*, hepatitis-B, is a so-called "reportable" disease, while CMV is not, we agree with appellants that, for our purposes, this is a distinction without a difference. Both this court and our supreme court referred to the reporting requirements only to emphasize that a physician's duty can extend to the protection of third persons. As the *DiMarco II* court stated, "Clearly, such [reporting] measures are mandated by law specifically to protect *third persons* who will come into contact with those who have been exposed to or have contracted a communicable disease." *DiMarco II, supra* at 563, 583 A.2d at 425 (emphasis in original).

Appellees argue that imposing a duty on a physician in this case would render physicians liable for the spread of any infectious disease, even the flu or the common cold. We disagree. The reason the court imposed a duty in *DiMarco* was to ensure that information regarding the infectious nature of communicable diseases be made available for the protection of others besides the patient. In the case of viruses such as the flu or the cold, such information is common knowledge. In contrast, where certain risks regarding the spread of certain diseases may only be known within the medical profession, it is essential that correct information be disseminated by the physician. For example, in the case of AIDS [5] or hepatitis, which appellees must concede are covered by the *DiMarco* duty, a physician has a duty to inform the patient how to avoid the spread of the disease by avoiding specific at-risk conduct, even though the general population may not be otherwise at risk. The same can be said of the communicable nature of CMV.

**5.** Acquired Immune Deficiency Syndrome.

■ We recognize that *DiMarco* involved a misfeasance by the treating physicians, who gave the phlebotomist incorrect information, whereas instantly, we are confronted with a physician who gave Mary Siple no information. We do not believe, however, that the public policy of this state would be well served by encouraging physicians to tell their patients nothing about their communicable diseases in order to avoid potential liability. The standard of care for a physician who is treating a patient with a communicable disease is to inform the patient about the nature of the disease and its treatment, to treat the patient, and to inform the patient how to prevent the spread of the disease to others. (R.R. at 193a, 195a, 226a, 257a.) To find that a physician has a duty to impart accurate information, but no duty to impart any information, would be to turn logic on its head.

■ The jury in the instant case might well decide that Dr. Browngoehl acted appropriately when he said nothing about the contagious nature of CMV. Conversely, a jury might decide that Dr. Browngoehl's duty required a simple warning to Mary Siple that pregnant women should not be involved in Ashley's caregiving, or that they should take extra precautions if they were. This is not an onerous burden. Yet it is one with a potentially enormous benefit.

Based upon all of the foregoing, we find that the duty enunciated by *DiMarco II does* apply to this case. We also find that the trial court erred as a matter of law in deciding that CMV is not the type of disease encompassed by this duty. Whether Dr. Browngoehl acted appropriately under the circumstances is a question better left to the jury.

As a result, we reverse the order of the trial court granting appellees' motion for summary judgment and remand for proceedings consistent with this opinion. Jurisdiction is relinquished.